### In re GURVITZ et al.

(District Court, D. Massachusetts. November 17, 1921.)

No. 28864.

Bankruptcy ⚖140(2)—Purchase by insolvent, on promise to pay not capable of honest fulfillment, held fraudulent.

Where shoe merchants, while so heavily involved that they had omitted customary statement of firm's condition and had not taken stock, because fearful of facing conditions, purchased stock on a promise, not capable of fulfillment in an honest and regular way, to pay in 15 days, the purchase was fraudulent, and the sellers, who delivered about a week before the involuntary petition in bankruptcy was filed, were entitled to restoration.

In Bankruptcy. In the matter of Morris Gurvitz and others, bankrupts. Petition by claimant for restoration of goods sold to bankrupts. Referee's order dismissing petition vacated, and order for restoration entered.[1]

J. L. Wiseman, of Boston, Mass., for petitioners.
Joseph Michelman, of Boston, Mass., for respondent.

MORTON, District Judge. This is a petition to reclaim goods from an estate in bankruptcy. The petitioners contracted to sell the goods in question (shoes) to the bankrupts on or about April 28, 1921, and delivered them at the request of the bankrupts on May 10 and May 12 following. The involuntary petition in bankruptcy was filed on May 17. The ground of the present petition is that the goods were fraudulently obtained without an intention or expectation of paying for them.

The bankrupts had been in business several years. They had started with a capital of $10,000, and up to the fall of 1920 they seem to have been reasonably successful. Beginning about October of that year, there was a heavy decline in the shoe business and in the prices for shoes. It was rapid during that autumn, and continued through the winter and spring at a slower rate. From the fall of 1920 to the time of the failure the shoe business was notoriously bad, and many houses engaged in it were seriously affected. The bankrupts were among those who suffered. At the time of the failure their capital had been completely wiped out and their debts were two to three times their assets. When these goods were contracted for, and when they were delivered, the bankrupts were deeply insolvent. Isenberg, who kept the accounts of the firm, testifies that—

"From November on, when things went bad, I couldn't pay any attention to business. I mean I did not know what I owed and what I had. I was too much worried to meet my bills. Q. You were hard pressed and were taking from one source to pay to another? A. That is what I was doing. Q. Robbing Peter to pay Paul? A. I was taking merchandise and selling it and trying to pay my bills."

The bankrupts testify that the customary statement of the firm's condition was omitted in January and in April, the reason being that

they were afraid to face the result which they feared the statement would show. Gurvitz testifies: "We lost, and that is why we didn't take stock." Both bankrupts testify that they did not realize that they were insolvent, and expected to pay for these goods at the time when they contracted for them and at the time when the goods came in. The learned referee who heard the witnesses accepted this statement, and, relying on it, found that there was no actual intent to defraud and accordingly dismissed the petition.

The indisputable facts, however, make it clear that the expectation on the part of the bankrupts to pay for the goods was illusory and unfounded, and was based on an ignorance of the actual condition of their business, brought about by their refusal to face the facts. No reasonable person, knowing the facts about the bankrupts' business, would have supposed that they could pay for these goods, except at the expense of some other creditor. It is not the case of business men who, being temporarily insolvent in the bankruptcy sense, were nevertheless trying to keep on and pull out with a reasonable chance of success. See In re Berg (D. C.) 25 Am. Bankr. Rep. 170, 183 Fed. 885. The absence of actual fraudulent intent, which arose from the bankrupts' refusal to face the facts as to their business and from deliberate ignorance concerning the actual condition of it, is not sufficient to save the transaction from being in legal effect fraudulent. In re Henry Siegel Co. (D. C.) 223 Fed. 369, and cases there referred to.

At the time when the contract of sale was made, they told the seller's representative that they could pay in 15 days; and it was because of this statement, in part, at least, that the goods were delivered. It was at that time impossible for the bankrupts to pay for the goods in an honest and regular way, and the statement was false. As it was material, this avoids the sale, regardless of whether there was a fraudulent intent on the part of the buyers. In re Underwood & Daniel (D. C.) 215 Fed. 279.

It follows that the order of the referee dismissing the petition to reclaim must be vacated and an order entered allowing reclamation.