## FISHER v. SHREVE, CRUMP & LOW CO., and three other cases.

(District Court, D. Massachusetts. June 15, 1925.)

Nos. 2133–2136.

1. **Bankruptcy ☞140(2)—Purchases by bankrupt made without any intention to pay for them were fraudulent and could have been rescinded by vendors.**

Purchases by bankrupt, made without any expectation on his part that he could pay for them, were fraudulent, and any of vendors, if they had so elected, could have rescinded sale and recovered possession of property.

2. **Bankruptcy ☞140(2)—Creditors presumed to have been aware of their rights to rescind sale of goods to bankrupt for his fraud.**

Where, at time of execution of agreement by which creditors of bankrupt agreed to accept return of goods sold him, which sale was subject to rescission for fraud, each knew or had reasonable cause to believe that bankrupt was insolvent and that any transfer of his property to them would operate as a preference, and each was also in possession of sufficient facts to inform it of bankrupt's fraudulent intent, they would be presumed to have been aware of their right to rescind sale to bankrupt for his fraud.

3. **Bankruptcy ☞140(2) — Any intention by vendors, who had sold goods to bankrupt, to waive their right to rescind and elect to treat sale as valid, ought not to be presumed.**

Any intention by vendors, who had sold goods to bankrupt, which sale they had a right to rescind for his fraud, in executing an agreement with bankrupt, to waive their right to rescind and to elect to treat sale as valid, ought not to be presumed, and unless terms of agreement compel a contrary conclusion, they should not be construed as a waiver of right or ratification of an invalid sale.

4. **Bankruptcy ☞140(2)—Agreement for return of goods sold bankrupt held not inconsistent with vendors' right of rescission, nor to estop them from asserting claim that sale was fraudulent and void.**

Where vendors, who had sold goods to bankrupt, which sale they had a right to rescind for his fraud, agreed only to accept a return of goods so far as he could return them, and to accept cash and notes for goods not returned, *held*, that it was not inconsistent with their right to rescind sale, nor did it estop them from asserting a claim that sale was fraudulent and void at least so far as concerned goods returned.

5. **Bankruptcy ☞165(2)—Agreement by which vendors agreed to accept return of goods sold bankrupt held not to create a preference.**

Agreement by which vendors, who had sold goods to bankrupt, were to accept a return of goods so far as he could return them and to accept cash and notes for goods not returned, *held* not to constitute a transfer of bankrupt's property to vendors or a preference within Bankruptcy Act, § 60 (a), (b), being Comp. St. § 9644, where each vendor had made a sale

which it had a right to rescind for bankrupt's fraud and was thereby entitled to recover possession of goods sold.

In Equity. Separate bills by Fred W. Fisher, trustee in bankruptcy, against Shreve, Crump & Low Company, against Chandler & Company, Inc., against Paine Furniture Company, and against R. H. White Company. Bills dismissed.

White & Barnes and Alfred B. White, all of Boston, Mass., for plaintiff.

Hutchins & Wheeler and Edward Hutchins, all of Boston, Mass., for defendants.

BREWSTER, District Judge. These four cases were tried together. Each is a suit in equity brought by the trustee in bankruptcy of Washington Cook to recover alleged preferences. In each case the defendant received from the bankrupt within the four months' period personal property which the plaintiff contends amounted to a transfer of property of the bankrupt and operated as a preference voidable under the provisions of section 60 (a) and (b) of the Bankruptcy Act (Comp. St. § 9644). In No. 2133 it is alleged that the defendant Shreve, Crump & Low Company received a hall clock valued at $300; in No. 2134, that the defendant Chandler & Co., Inc., received two rugs valued at $300; in No. 2135, that the defendant Paine Furniture Company received a lot of furniture valued at $985; and in No. 2136 it is alleged that the R. H. White Company received household furniture valued at approximately $1,000.

The same controlling facts are to be found in each of the four cases, and they may conveniently be disposed of in one opinion.

The bankrupt, with capital somewhat limited, entered upon the real estate business, building houses for sale. In December, 1923, with two houses partially completed, his capital practically exhausted, and owing approximately $10,000 for building materials, being then hopelessly insolvent, he decided to increase his liabilities before the crash and thereby to obtain for himself and family some of the necessaries and luxuries of life. He also decided that he would spend a few months in the South and West.

[1] Accordingly, during the month of December, 1923, he bought on credit of the four defendants, not only the property which is the subject-matter of these suits, but much more which he was unable to return. During the same month he bought on credit from many other stores in Boston clothing, jewelry, and articles of personal effect. In all,

his purchases of this character during December and early January amounted to over $5,000. The evidence, including the testimony of the bankrupt, admits of but one conclusion respecting the bankrupt's intention. Each and every purchase made by the bankrupt of the four defendants of the property in question was made without any expectation on the part of the bankrupt that he could pay for it, and I therefore find that when the bankrupt bought and obtained delivery of all the said property, he fraudulently intended not to pay for it. Each purchase was so far vitiated by the fraud that any of the defendants could, if it had so elected, have rescinded the sale and recovered possession of the property delivered to the bankrupt. In re Henry Siegel Co. (D. C.) 223 F. 369; In re Gurvitz et al. (D. C.) 276 F. 931.

When the bankrupt returned from a three months' vacation spent in Florida and California, he consulted an attorney who endeavored to make a settlement with creditors outside of the bankruptcy court. For this purpose his creditors were divided into two classes, viz.: Those who had furnished building material, called the "building creditors," and those from whom the bankrupt had made the purchases above referred to, who were called the "store creditors."

The building creditors were to receive 30 per cent. in cash. The store creditors were to accept a return of such property as the bankrupt was then able to return, and the balance of the account was to be paid partly in cash and partly by notes extending over a long period of time.

The four defendants each signed an agreement, a copy of which is as follows:

"I, the undersigned creditor of Washington Cook of Sharon, Massachusetts, in consideration of one (1) dollar and the promise of other creditors of said Cook to do likewise, do hereby promise and agree to credit said Cook at the full purchase price any article or articles purchased of us by said Cook and returned to us by him with our consent and to accept in full settlement of the balance of our claim against said Cook ten (10) cents on a dollar in cash and the notes of said Cook for the remainder thereof, payable two (2) per cent. every three months until paid."

[2] Thereafter the defendants took back the various articles of furniture and household furnishings which are described in the respective bills of complaint. At the time of the execution of the agreement, each defendant knew, or had reasonable cause to

believe, that the bankrupt was insolvent and that any transfer of his property to them would operate as a preference. Each was also in possession of sufficient facts to inform it of the bankrupt's fraudulent intent, and must be presumed to have been aware of its rights to rescind the sale on account of fraud. If the goods returned are to be regarded as the property of the bankrupt at the time they were returned, then I am forced to find that the defendants each received a voidable preference and the plaintiff would be entitled to recover in each of the suits.

[3] The question, therefore, in this case is whether at the time of the transfer the property transferred was the bankrupt's property. The situation that confronted each defendant on June 24, 1924, when it entered into the agreement for a return, was this: It had made a sale which it had a right to rescind and thereby to recover possession and title to the goods sold. Up to that time Cook's title was not good, due to the element of fraud which had entered into the transaction. The merchandise returned, therefore, was the property of the defendant rather than of the bankrupt, unless it can be said that the effect of the agreement was to vest absolute title in the bankrupt not only to the goods not returned but to the goods returned, or, in other words, unless the defendant had, in executing the agreement, waived its right to rescind and elected to treat the sale as valid and accepted in part payment bankrupt's property. An intention so opposed to the interest of the defendants ought not to be presumed, and unless the terms of the agreement compel a contrary conclusion, they should not be construed as a waiver of rights or a ratification of an invalid sale.

[4] When we analyze the agreement, we find that the defendants agreed only to accept a return of the goods so far as the purchaser was in a position to return them and to accept cash and notes for the goods not returned. I see nothing in this document inconsistent with defendants' rights of rescission, or which would operate to estop them from asserting a claim that the sale was fraudulent and void, at least so far as concerned the goods returned.

[5] I see in it nothing inconsistent with an intention on the part of the contracting parties to return and receive back property to which the defendants were lawfully entitled. The property thus delivered by the bankrupt to each defendant under the agreement of June 24, 1924, was not the property of the bankrupt. There was, therefore, no transfer of bankrupt's property to the defendants

7 F.(2d)—11

and no preference within the meaning of section 60 (a).

In each case the bill may be dismissed without cost.