UNITED STATES FIDELITY & GUARANTY CO. v. NATIONAL BANK OF AMER- ICA et al.

No. 475 Eq.

District Court, N. D. Indiana, Hammond Division.

Sept. 13, 1933.

Arthur L. Gilliom, of Indianapolis, Ind., for plaintiff.

McMahon & Smith, of Gary, Ind., for defendants.

SLICK, District Judge.

The facts in this case are all stipulated, and the stipulation of facts is incorporated verbatim in the special findings of fact. The facts are voluminous, and it is not necessary to recite in this memorandum of opinion all of the facts.

Briefly, the facts are that Commercial Trust Company of Gary drew its check on the Gary State Bank payable to the plaintiff herein in the sum of $2,196.89. This check came to the plaintiff, and was deposited with Securities Trust Company of Indianapolis for collection. The Securities Trust Company in turn deposited the check with the Fletcher American National Bank of Indianapolis for collection. The Fletcher American National Bank sent the check to the National Bank of America of Gary for collection. The check was received by the National Bank of America at Gary on Dec. 31, 1931.

It was at this time, and had been for a long time, the practice and custom of the National Bank of America, when it received collections from Fletcher American National Bank, to make such collections through the clearing house at Gary and to remit by draft on Chicago. This custom was well known by Fletcher American National Bank, and was followed in this case, the check being presented on December 31, 1931, to the Gary State Bank through said clearing house at Gary.

The National Bank of America closed its doors January 2, 1932. A draft of which the check in question was a part was issued by the National Bank of America to Fletcher American National Bank, but failed to clear before the National Bank of America closed its doors. Defendant Jennings, receiver of National Bank of America, took possession of all the assets of the National Bank of America, and took possession of the $2,196.89 in question.

The question to determine in this case is whether plaintiff be allowed a preferred claim in the full amount of $2,196.89, or whether it receive on its claim only ratable dividends paid to general creditors. The serious question for decision is whether a collection made by a national bank operating in the state of Indiana where the statute provided that the collecting bank act as agent or subagent for the purpose of collection shall be paid in full. In other words, does the Indiana Uniform Bank Collection Code govern here, or is it a nullity so far as national banks operating in Indiana are concerned?

The federal statutes and decisions in reference to distribution of assets of insolvent national banks control and provide for ratable dividends by the Comptroller of money of a bank turned over to him by the receiver of such national bank. In other words, the receiver reduces the assets to cash and turns this cash, together with all other cash belonging to the bank, over to the Comptroller, who in turn ratably divides it amongst all claimants.

The question then resolves itself to the inquiry as to whether the money in the hands of the receiver collected under the Indiana Uniform Bank Collection Code (Acts 1929, c. 164) was the money of the bank, and so constituted assets, or was the money held in, or impressed with, a trust, and hence not assets of the bank, which the receiver in charge could legally turn over to the Comptroller for ratable distribution under the federal statute.

There is no doubt that the National Banking Act (see 12 USCA § 21 et seq.) and decisions of the federal courts control in the distribution of the assets of an insolvent national bank. They, the assets, must be ratably distributed to all the creditors, but did the

money in controversy constitute assets of the bank? Did the money so collected belong to the bank? Did the bank get title to the money, or was it the money of plaintiff held in trust by the insolvent bank?

Defendant argues that to adopt the theory that the statute of Indiana is controlling on the question of agency is equivalent to holding that each state in the union may adopt rules for distribution of assets of insolvent national banks. The results are not so far-reaching.

The federal rule is that a receiver of an insolvent national bank shall turn over for distribution the assets of the failed bank, not the assets, cash, or property of some other person held by such insolvent bank as agent or in trust. The federal rule does not require that money in the possession of an insolvent national bank as agent shall be considered assets.

The Indiana state rule is that money collected as this money was shall be held by the collecting bank as agent. There appears to be no conflict between the federal statute providing for ratable distribution of assets and the decisions of the federal courts under that statute and the Uniform Bank Collection Code of Indiana. National banks are amenable to the laws of the state in which they operate. They are governed in all respects by the state law, except where the state law contravenes the federal law, in which case the federal law is controlling. See McClellan v. Chipman, 164 U. S. 347, 17 S. Ct. 85, 87, 41 L. Ed. 461, where the Supreme Court of the United States lays down the rule in the following language: "The rule being the operation of general state laws upon the dealings and contracts of national banks; the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States, or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge the duties imposed upon them by the law of the United States."

The court in this opinion used the following language: "The purpose and object of congress in enacting the national bank law was to leave such banks, as to their contracts in general, under the operation of the state law, and thereby invest them as federal agencies with local strength, while at the same time preserving them from undue state interference wherever congress, within the limits of its constitutional authority, has expressly so directed, or wherever such state interference frustrates the lawful purpose of congress, or impairs the efficiency of the banks to discharge the duties imposed upon them by the law of the United States."

The state law of Indiana provides explicitly that the funds in question shall be held as agent or subagent. The federal law contains no contrary provision. To sustain plaintiff's contention is to give effect to the Indiana Code as well as to the federal acts. To sustain defendant's contention would be to destroy the effect of the Indiana Code as applied to national banks. The constitutionality of the Indiana Uniform Bank Collection Code is not challenged. It is and was in full force and effect at the time of this transaction.

Section 2, chapter 164, of the Indiana Acts of 1929, page 515, provides that, "where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be subagent of the depositor."

Section 1 of the same act at page 514 provides that: "The term 'bank' shall include any person, firm or corporation engaged in the business of receiving and paying deposits of money within this state."

No authority has been cited, and I think none can be, that directs or permits the appropriation by a receiver of funds held in trust or as agent for another person. These funds must be paid over by the receiver to the owner thereof. They do not constitute assets of the failed bank, do not belong to the bank, and the receiver has no right to hold them or pay them over to the Comptroller for distribution, or to do anything with them except to turn them over to the rightful owner, the plaintiff in this case.