JENNINGS, RECEIVER, ET AL. *v.* UNITED STATES FIDELITY & GUARANTY CO.

No. 338.  Argued January 16, 17, 1935.—Decided February 4, 1935.

*Messrs. John F. Anderson* and *George P. Barse,* with whom *Mr. F. G. Awalt* was on the brief, for petitioners.

*Mr. Arthur L. Gilliom,* with whom *Mr. Samuel O. Pickens* was on the brief, for respondent.

By leave of Court, *Messrs. F. G. Awalt* and *George P. Barse* filed a brief on behalf of the Comptroller of the Currency, as *amicus curiae.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A trust has been impressed upon the assets of a national bank in the hands of a receiver for the proceeds of a check collected through a clearing house before the closing of the bank by the Comptroller of the Currency. The question is whether the trust may be upheld.

On December 29, 1931, the Commercial Trust Company of Gary, Indiana, as maker, delivered to the respondent, United States Fidelity and Guaranty Company, a check to the order of respondent in the sum of $2,196.89 upon the Gary State Bank of Gary, Indiana, as drawee. The check, duly endorsed by the payee, was deposited in a bank in Indianapolis, and thereafter was transmitted for collection to the National Bank of America at Gary, Indiana, being received for that purpose on December 31, 1931. At that time both the collecting bank (the National Bank of America) and the drawee bank (Gary State Bank) were members of the Gary Clearing House Association. In accordance with banking custom the National Bank of America delivered to the local clearing house whatever checks in its possession were payable by the member banks (a total of $10,425.45) including the foregoing item of $2,196.89, and received in return the checks drawn on itself ($11,470.19). The outcome was a debit balance of $1,044.74, which it paid on the same day by a draft, thereafter duly honored, to the order of the clearing house. At the same time it delivered to the forwarding bank in Indianapolis a draft for $3,660.83, which covered along with other items the check for $2,196.89, collected from the drawee in the manner just described. Before the draft so transmitted could be honored, its maker, the collecting bank, had been forced to close its doors (January 4, 1932), and the Comptroller of the Currency was in possession of the business.

This action, which was begun in a state court in Indiana and was thereupon removed to a United States District Court, was brought by the United States Fidelity and Guaranty Company, payee of the check for $2,196.89, against the collecting bank and Jennings, its receiver, to impress a trust upon the assets to the extent of the proceeds of collection, and for payment accordingly. The District Court held that the payee was entitled to a preference over the general creditors of the insolvent bank, and entered a decree for the face amount of the check with interest. 4 F. Supp. 569. Upon appeal to the Circuit Court of Appeals for the Seventh Circuit, the decree was modified as to the interest, and as modified affirmed. 71 F. (2d) 618. A writ of certiorari brings the case here.

There was in force in Indiana in 1931 a statute known as the Bank Collection Code (Indiana Acts, 1929, c. 164 [1]), which is applicable to national banks in so far as it is consistent with the policy or provisions, express or reasonably implied, of the National Bank Act or of other federal acts of paramount authority. *Lewis* v. *Fidelity & Deposit Co. of Maryland*, 292 U. S. 559, 566; *First National Bank* v. *Missouri*, 263 U. S. 640, 656. Under that code (§ 2), the relation between the forwarding bank and the collecting bank is that of principal and agent until the agent has completed the business of collection. Whether a fiduciary relation continues even afterwards, upon the theory that the proceeds of the collection until remitted to the forwarder are subject to a trust, depends upon the circumstances. In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought

---

[1] The Code is stated to have been adopted in as many as eighteen states. It was framed by counsel for the American Bankers Association in an endeavor to promote uniformity of banking practice in the collection of commercial paper.

to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own. *Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S. 50; *Marine Bank* v. *Fulton Bank,* 2 Wall. 252; *Planters' Bank* v. *Union Bank,* 16 Wall. 483, 501; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.,* 242 Mass. 181, 185, 186; 136 N. E. 333; *Freeman's National Bank* v. *National Tube Works Co.,* 151 Mass. 413, 418; 24 N. E. 779; *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553, 558; 20 N. E. 193; *First National Bank of Richmond* v. *Wilmington & W. R. Co.,* 77 Fed. 401, 402; *Philadelphia National Bank* v. *Dowd,* 38 Fed. 172, 183; *Merchants' Bank* v. *Austin,* 48 Fed. 25, 32.[2] "One who collects commercial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well known usages, so far as to permit the money collected to be mingled with funds of the collecting bank." *Freeman's National Bank* v. *National Tube Works Co., supra.* There is a contention for the respondent that the rule at common law has been modified by statute. We shall consider later on whether the change, if any, is material upon the record now before us.

At the closing of its doors on January 4, 1932, the collecting bank at Gary had finished the business of collection, and had arrived at the stage when it was subject to a duty, either as trustee or as debtor, to make remittance of the proceeds. In the method of collection there had been no departure from the ruling of this court in *Federal Reserve Bank* v. *Malloy,* 264 U. S. 160, that an agent bank is at fault when it accepts anything but cash in the absence of custom or agreement for the acceptance

---

[2] The decisions to the contrary are criticized in *Hecker-Jones-Jewell Co.* v. *Cosmopolitan Trust Co., supra,* and additional decisions are collected by Scott, Cases on Trusts, pp. 67, 68.

of a substitute. To preclude the extension of that ruling to collections through a clearing house, the Bank Collection Code makes provision in § 9 for media of payment that are to be deemed equivalent to currency. There may now be acceptance of a bank draft, or settlement through a clearing house in the customary manner, without involving the agent in liability for damages if the draft is dishonored or the credit subsequently revoked.[3] On the other hand, when credit ceases to be provisional, or when the accepted instrument is paid, the collecting bank is liable as debtor, if not otherwise, to the same extent as if payment had been made in cash over the counter. One duty—the duty to collect—is at an end, and another—the duty to remit—has arisen in its place.

To say that a collecting agent may be held to the liability of a debtor " as if " payment had been made in cash is not to say that the two methods of collection are

---

[3] § 9. " Where ordinary care is exercised, any agent collecting bank may receive in payment of an item without becoming responsible as debtor therefor, whether presented by mail, through the clearing house or over the counter of the drawee or payor, in lieu of money, either (a) the check or draft of the drawee or payor upon another bank or (b) the check or draft of any other bank upon any bank other than the drawee or payor of the item or (c) such method of settlement as may be customary in a local clearing house or between clearing banks or otherwise: *Provided,* That whenever such agent collecting bank shall request or accept in payment an unconditional credit which has been given to it on the books of the drawee or payor or on the books of any other bank, such agent collecting bank shall become debtor for such item and shall be responsible therefor as if the proceeds were actually received by it in money."

The time within which credit, when once given, may be revoked is defined by § 3: "A credit given by a bank for an item drawn on or payable at such bank shall be provisional, subject to revocation at or before the end of the day on which the item is deposited in the event the item is found not payable for any reason. Whenever a credit is given for an item deposited after banking hours such right of revocation may be exercised during the following business day."

equivalent for every other purpose. More particularly it does not mean that they are equivalent for the purpose of identifying a *res* to be subjected to a trust. The distinction is made definite by the controversy before us. What happened in the clearing house was this, that a check for $2,196.89, due to the collecting bank as agent or fiduciary, was used to cancel or extinguish liability upon a check or checks of equal amount due from it as principal, all with the sanction of statute and with the tacit assent of the forwarder or owner. At the close of the day there was not a dollar in the treasury of the agent that could be identified as part of the proceeds of collection or as a substitute therefor. If the money had been paid over the counter with the understanding that it was accepted as a special deposit (*Blakey* v. *Brinson*, 286 U. S. 254, 262, 263; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Genesee Wesleyan Seminary* v. *United States Fidelity & Guaranty Co.*, 247 N. Y. 52, 55; 159 N. E. 720), the doctrine of a continuing trust would charge the agent with a duty to set the proceeds of collection apart from other assets, and hold them intact for transmission to the forwarder. Nothing of the kind was done. Nothing of the kind was required or expected to be done. On the contrary, the statute gave notice to the agent that instead of establishing a trust, it was at liberty to set off what was due to it in one capacity against what was owing by it in another, being liable, however, as debtor when the set-off became final.

We are not concerned at this time with a constructive trust in the strict sense, a trust *ex maleficio*, which may be fastened upon a wrongdoer irrespective of intention. Pomeroy, Equity Jurisprudence, vol. 1, § 155; vol 3, §§ 1044, 1046. There was no wrongdoing here, but conduct wholly regular, with the result that any trust existing must be one implied in fact. In that situation there is no basis for a holding that a trust was transferred

from the proceeds of collection to an equivalent part of the cash resources of the agent, the beneficial interest of the principle being unaffected by the set-off. Cf. *Knatchbull* v. *Hallett*, 13 Ch. Div. 696; *National Bank* v. *Insurance Co.*, 104 U. S. 54, 68; *Schuyler* v. *Littlefield*, 232 U. S. 707. To draw such an inference, far from promoting intention, would ignore and override it. By a permitted course of dealing the proceeds of the check, instead of being deposited upon collection in the vaults of the collecting agent, were specifically appropriated to the discharge of other obligations. There was not even a partial or proportionate payment that could have found its way into the vaults, for the balance at the close of the operations of the day was adverse to the collector and in favor of the clearing house. These being the facts, there is no room in our view for the use of those presumptions that affect the conduct of a wrongdoer who draws upon a mingled fund made up of his own moneys and another's. *Knatchbull* v. *Hallett, supra; National Bank* v. *Insurance Co., supra.* The presumption collapses when there is neither trust nor wrong.

For the purposes of this case we do not need to determine whether the Bank Collection Code has changed the preëxisting rule whereby in the absence of tokens of a contrary intention a bank ceases to be an agent and is turned into a debtor when collection is complete, without reference to the form or manner of the payment. If we assume for present purposes that a trust will attach under the statute when the proceeds of the collection are in the hands of the collector, the assumption will not hold where there are no proceeds of collection that have ever come into his hands, or where such proceeds as there were have been so mingled and confused that it is impossible to follow them. Currency paid over the counter and deposited in a vault is a thing that can be identified and so subjected to a trust whenever in equity and conscience

a trust should be implied. Not only that, but a trust so created will not fail though other dollars may have taken the place of those originally received, for dollars are fungibles and any one of them will be accepted as a substitute for another. *Knatchbull* v. *Hallett, supra.* But the situation is very different when what has been received by the collecting agent is not a thing at all, but a reduction of liabilities by set-off or release. *Blakey* v. *Brinson, supra; People* v. *Merchants & Mechanics Bank,* 78 N. Y. 269, 272, 273; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co., supra,* p. 187; *City Bank* v. *Blackmore,* 75 Fed. 771; *Anheuser-Busch Brewing Association* v. *Clayton,* 56 Fed. 759; *Farmers National Bank* v. *Pribble,* 15 F. (2d) 175, 176; *Dickson* v. *First National Bank,* 26 F. (2d) 411; *Schilling* v. *Rowe,* 64 F. (2d) 188, 190; *Allied Mills* v. *Horton,* 65 F. (2d) 708, 710; *Smith* v. *Zemurray,* 69 F. (2d) 5, 6, 7; *First National Bank of St. Petersburg* v. *Miami,* 69 F. (2d) 346; *Wisdom* v. *Keen,* 69 F. (2d) 349.[4] A debt does not furnish a continuum upon which a trust can be imposed after cancellation or extinguishment has put the debt out of existence.

The truth of this statement, though obvious enough upon its face, finds point and confirmation when the benefit, if any, accruing to the debtor is viewed as of the time of insolvency or later. What was done by the collecting bank through a settlement in the clearing house has not increased the assets available for distribution in the hands of the receiver. What was done through that settlement has had no effect after insolvency except to diminish liabilities. The dividend that would be due upon the debts canceled through the set-off if they were now

---

[4] Many cases are collected in Bogert, Failed Banks, Collection Items and Trust Preferences, 29 Mich. Law Review 545, 551, 552.

to be revived is the measure of any benefit accruing to the creditors. Decisions of other courts, to the extent that they give support for a different conclusion are built, as we think, upon an inadequate analysis, and do not win our approval.[5] It is the benefit to the creditors, not the loss to the respondent, that marks the gain to the fund now held by the receiver. If the respondent is permitted to prove against the assets on a parity with other creditors, the share thus allotted will correspond accurately to whatever accretion has resulted from the act of set-off and cancellation in the operations of the clearing house.

One other section of the Bank Collection Code is still to be considered. This is § 13, which has to do, as its caption indicates, with the procedure following insolvency. What is regulated in that section is not the relation between a bank and its correspondents during the normal course of business. What is regulated is the relation and the remedy when insolvency has set in and business is suspended.[6] Then for the first time a trust comes into

---

[5] For a collection of the cases, see 82 A. L. R. 97.

[6] " Sec. 13. (1) When the drawee or payor, or any other agent collecting bank shall fail or be closed for business by the state bank commissioner or by action of the board of directors or by other proper legal action, after an item shall be mailed or otherwise entrusted to it for collection or payment but before the actual collection or payment thereof, it shall be the duty of the receiver or other official in charge of its assets to return such item, if same is in his possession, to the forwarding or presenting bank with reasonable diligence.

.          .          .          .          .

"(3) Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has

being through the action of the statute, a trust coëxtensive in its subject matter with all the assets of the bank, irrespective of their nature, and yet a trust for a special class, the owners of negotiable instruments whose debts remain unsatisfied after payment of the paper has been collected by the agent. Cf. *Spradlin* v. *Royal Manufacturing Co.*, 73 F. (2d) 776. "Such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank." A trust so created, to arise upon insolvency, is a preference under another name. As applied to a national bank, the preference is plainly inconsistent with the system of equal distribution established by the federal law. R. S. § 5236; 12 U. S. C. § 194; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 283, 284; *Easton* v. *Iowa,* 188 U. S. 220, 229; *Cook County National Bank* v. *United States,* 107 U. S. 445; *Texas & Pacific Ry. Co.* v. *Pottorff,* 291 U. S. 245; *Lewis* v. *Fidelity & Deposit Co. of Maryland, supra.* The power of the nation within the field of its legitimate exercise overrides in case of conflict the power of the states.

The decree is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*

---

been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."