## LAS VEGAS SAV. BANK et al. v. CASEY.
### No. 478.

District Court, N. D. Texas, Amarillo Division.

June 3, 1935.

J. R. Modrall, of Las Vegas, N. M., and Reeder & Reeder, of Amarillo, Tex., for plaintiffs.

Robert E. Stalcap, of Dalhart, Tex., for defendant.

JAMES C. WILSON, District Judge.

The question is whether a fund of $1,057.44 in the hands of the defendant receiver may be impressed with a trust in favor of plaintiffs, such as to constitute a preference, entitling them to payment in full, by a closed bank rather than a ratable distribution, along with general creditors, as contended for by the receiver.

Briefly, the facts are: That one, B. M. Addington, on the 24th day of February, 1933, at Wagon Mound, N. M., agreed to purchase some cattle from the plaintiff, J. H. Leftwich, and in payment tendered an ordinary customer's check for $1,057.44, on the First National Bank of Dalhart, Tex. Leftwich took the precaution to call his bank, the plaintiff, Las Vegas Savings Bank, to get them to call the Dalhart Bank to see if the check was all right. They were assured it was, and would be paid when presented. The Las Vegas Savings Bank so advised Leftwich, and, relying on this, the cattle deal was closed. Two days later, Leftwich deposited the check in the Las Vegas Savings Bank for collection; indorsed by him, and also by the cashier of the Las Vegas Bank, it was then sent by mail direct to the Dalhart Bank with the following instructions: "Check of B. M. Addington with livestock contract attached. Please remit direct to Commerce Trust Company, Kansas City, Mo., for our credit and advise. This check was given approval by telephone conversation with our Mr. Gerdeman."

February 28, the Dalhart Bank charged the account of the drawer, B. M. Addington, with said check, canceled same, and issued its cashier's check, as follows:

"The First National Bank
"Dalhart, Texas, Feb. 28, 1933. No. 28545
"Pay to the Order of Commerce Trust
Co. K. C. Mo. $1057.20
"First Nat'l Bank
"Dalhart       $1057 Dol's 20 Cts.       Dollars
"Cashier's Check
. "W. E. Farwell, Cashier"

This check was forwarded directly to the Commerce Trust Company of Kansas City, Mo., with instructions to credit the Las Vegas Bank. The Commerce Trust Company immediately attempted, in the customary course of business, to collect the check, but the Dalhart Bank on the 3d day of March, 1933, closed its doors, and the payment of the check was refused when presented.

It is stipulated that Addington, at all times in question, had to his credit in the Dalhart Bank sufficient deposits to pay the check, and that the Dalhart Bank, during such period, likewise had, and now has, sufficient cash to pay same in full. A conservator first had charge of the Dal-

hart Bank, then the defendant, Casey, took charge as receiver, and since has been liquidating the bank. No part of the claim has been paid.

Plaintiffs insist that under such facts the $1,057.44 in the Dalhart Bank was impressed with a trust in their favor making it a preference claim. Whatever the holdings of other courts may be, it is my view that such is not the holding of the Fifth Circuit, or the Supreme Court. The latest expression of the Fifth Circuit in point seems to be the case of the City of Miami v. First National Bank of St. Petersburg, Fla., et al. This case was on appeal twice, and is reported first in 58 F.(2d) 561, and last in First Nat. Bank v. City of Miami, 69 F.(2d) 346, 347. From these reports I gather the facts of that case to be substantially as follows: That the County Finance Corporation at Miami delivered its check on the First National Bank of St. Petersburg for $5,000 payable to the city of Miami, or its order. That check was delivered to the First National Bank of Miami by the city, and was in turn indorsed by the Miami Bank and sent in the regular course of banking to the First National Bank of Tampa, Fla., for collection, which bank, in due course of banking, sent it directly to the St. Petersburg Bank for collection and remittance. The St. Petersburg Bank charged the County Finance Corporation's account with the check, marked the same paid, and in due course returned the canceled check to the Finance Corporation. The St. Petersburg Bank immediately issued its draft for $5,000 and sent it to the Tampa Bank. Before the draft was presented for payment, the St. Petersburg Bank failed and suspended business. It was agreed that the Finance Corporation at all times in question had sufficient funds in its account to take care of the check, and also that the receiver after he took over the bank likewise had sufficient cash on hand at all times to pay the check.

As will be readily seen, the facts in the Miami Case are as nearly identical with the facts of this case as can be found in the books. There was one more participating bank in the process of attempted collection in that case, than in the one here. In all other respects, the facts are identical, unless it be in the Miami Case that the drawee remitted by draft, and in this one by cashier's check, and of course that makes no distinction between them. In each instance, payment was refused on account of the insolvency of the bank.

In rendering the opinion for the court on the last appeal, Judge Hutcheson said:

"As alleged the draft 'was presented to the Petersburg bank for payment and was paid,' as proven there was no payment. The draft was indeed marked paid, but the payment thus evidenced was not in fact the payment of moneys or of any identified or identifiable thing. It was merely a form of bookkeeping; 'it was but a shifting of its liability' from the drawer to the forwarding bank. Anheuser-Busch v. Clayton (C.C.A.) 56 F. 759, 760. As alleged 'said sum of $5,000 thus collected and held for it by the St. Petersburg Bank is still in the possession of the bank and its receiver.' As proven, no sum whatever was collected and held for plaintiff by the St. Petersburg bank to which a trust could attach. In this state of the proof to hold the bank as trustee would be to hold it a trustee not of a thing, but of a claim against itself, a holding on its face so artificial and unreal as to be impossible. * * *

"When, however, it is sought, as here, to hold the bank on whom the check is drawn not as debtor, but as trustee, it must be made to appear that there was an agreement expressly made or implied in law from the relation, that the bank should collect and hold the moneys in trust, and that it actually did so."

There is no evidence in this record to show any agreement, expressed or implied, that the Dalhart Bank should collect and hold the moneys in trust for the plaintiffs, and that it actually did so. There is nothing in the instruction quoted above from the Las Vegas Bank to the Dalhart Bank that can be given such a construction. It rather tends to establish the contrary, in that it said: "Please remit direct to Commerce Trust Company, Kansas City, Mo. for our credit." This was a very general instruction, and certainly the Dalhart Bank would not understand that it was to ship actual money direct to the Commerce Trust Company. In the absence of specific instructions as to how the money should be remitted, it would be assumed and understood from such directions, that to remit in due course of banking would be a compliance. Under such instructions, the Dalhart Bank was left entirely free to select its own method of remittance, and it selected the method of cashier's check. All of the facts here rather tend to show an un-

derstanding on the part of the Las Vegas Bank that the Dalhart Bank would become debtor to it and the other plaintiff for the collection item. I am not able to see here any unusual feature that would give it the appearance of a trust fund. If such could be the holding here, a like holding would seem to follow as to every bank cashier's check, draft, or like obligations that might be floating at the time of its failure.

Though not quite so similar, I think the cases of David H. Jennings, Receiver, v. U. S. Fidelity & Guaranty Company, 294 U.S. 216, 55 S.Ct. 394, 395, 79 L.Ed. 869, 99 A.L.R. 1248, and Old Company's Lehigh, Inc., v. Henry E. Meeker, Receiver, 294 U. S. 227, 55 S.Ct. 392, 79 L.Ed. 876, opinions by Justice Cardozo, February 4, 1935, are to the same effect as the Miami Cases; particularly the former.

I may add, this is the authority mainly relied upon by plaintiffs' counsel; the particular part of the opinion so relied upon being: "In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own."

The trouble is there are no tokens of a contrary intention shown to exist in this case. To determine this, we must look to the dealings of the parties, the manner of the effort at collection, and, more important, any instructions given. I fail to see any such tokens. The instructions quoted above fail to reveal any, as I have heretofore suggested. Plaintiffs could have in such instructions directed the drawee bank to ship the money by express or registered mail to the Commerce Trust Company, or that the $1,057.44 be put in a safety deposit box. If so, the question would be simple; it would be segregated, identifiable, and would be in a true sense a trust fund. Nothing of the kind was done. There is nothing in the instructions given to indicate other than the fullest faith and confidence in the Dalhart Bank. Under the instructions, it could only be understood and expected that this country bank would remit in the form of some obligation of its own, customarily used by banks in making such remittances. Justice Cardozo, in the case of Jennings v. U. S. Fidelity & Guaranty Co., supra, quoted approvingly, "One who collects commercial paper through the agency of banks must be held to impliedly contract that the business may be done according to their well-known usages, so far as to permit the money collected to be mingled with the funds of the collecting bank," from Freeman's National Bank v. National Tube-Works, 151 Mass. 413, 24 N.E. 779, 8 L.R.A. 42, 21 Am.St.Rep. 461.

In that opinion, Justice Cardozo made another statement that bears significantly on this case: "As applied to a national bank, the preference is plainly inconsistent with the system of equal distribution established by the federal law."

To my view, the facts of that case made a much stronger showing for the plaintiff to impress the trust than in this case, because there the defaulting bank was one of the intervening collection banks, not the drawee, as in this case, and a collection bank which was not selected by the one for whom the collection was being made. Here the plaintiffs, payee in the check, and his bank expressly trusted the drawee collecting bank to remit to the Kansas City bank for them, and impliedly to select its own way of doing it.

It is uniformly the holding of the court on this subject, that, in order to entitle one to preferential payment out of the assets of an insolvent bank, three essential elements must appear: (1) A trust relation; (2) augmentation of the assets of the bank; (3) the fund traced into the hands of the receiver.

I am not able to see from the facts stated above, that either one of these indispensable elements is present in this case, unless it be the third, and as to that, certainly the fund is not identifiable from like funds in the receiver's hands.

For the reasons stated, the case will be dismissed for want of equity.