**PULSIFER v. PICHER.**
No. 1378.

District Court, D. Maine. S. D.
May 14, 1937.

Harvey D. Eaton, of Waterville, Me., for plaintiff.

F. Harold Dubord, of Waterville, Me., for receiver.

PETERS, District Judge.

This matter was heard by the court without a jury. The action was brought to recover the proceeds from the collection of a maturing bond delivered by the plaintiff to the Peoples Ticonic National Bank before its failure, the plaintiff claiming that he should be paid in full by the receiver of the bank under the circumstances disclosed.

It appears that on February 28, 1933, the plaintiff delivered to the bank a United States Rubber Company bond for $1,000 which was payable on March 1st, with a request that the bond be collected.

Upon receipt of the bond the bank sent it to the New York Trust Company for collection, with directions to credit the amount received to the Fidelity Trust Company of Portland, which was a correspondent of the Peoples Ticonic Bank, the latter having no correspondent in New York. It was the custom of the Peoples Ticonic Bank to remit its New York collection items to the New York Trust Company, which was the New York correspondent of the Fidelity Trust Company, the arrangement being that proceeds would be credited to the Fidelity Trust Company and the latter would credit to the Peoples Ticonic Bank on its regular account.

The bond referred to was collected by the New York Trust Company on March 1 or 2, 1933, and credited to the Fidelity Trust Company as directed. As stated by counsel for plaintiff, "the Fidelity received it (the proceeds) not later than March 2nd." On March 4th both the Peoples Ticonic Bank and the Fidelity Trust Company closed, and never reopened. Both are in the hands of a receiver.

The remittance was credited upon the books of the Fidelity Trust Company to the Peoples Ticonic Bank on March 11th, but only as reflecting the prior transaction which was completed by the collection of the bond before the banks closed. No further entries appear on the Peoples Ticonic books and no payment was made by it to the plaintiff.

The plaintiff claims that he is entitled to full payment of the $1,000 received for the bond referred to, on the ground that the bank was acting all the way through as an agent or trustee, and that the proceeds of the bond collected should be impressed with a trust. Plaintiff also contends that the bank became a trustee ex maleficio on the ground that the bank acted without authority in instructing the New York Trust Company to credit the proceeds of collection to the Fidelity Trust Company.

The defendant contends that the relationship of principal and agent between the plaintiff and the bank, which existed at the beginning of the transaction, ceased when collection was made, and that the plaintiff is one of the general creditors of the bank and not entitled to any priority.

In the ordinary case of the receipt of an item for collection by a bank, like a draft or bond, in the absence of a special agreement, the bank acts as agent of the owner of the item until collection is made through customary banking channels, when the bank becomes a debtor to the owner for the amount received, and if, before payment is made to the owner, the bank fails, the owner is a general creditor only.

"One who collects commercial paper through the agency of banks must be held impliedly to contract that the business may be done according to their well-known usages, so far as to permit the money collected to be mingled with funds of the collecting bank. Dorchester & Milton Bank v. New England Bank, 1 Cush. 177. When a payment is made to his agent and the money is put with the money of the collecting bank, he has a right to receive a corresponding sum, but he loses his right to the specific fund. In the absence of directions to the contrary, the collecting bank may pay it to the bank to which it should regularly be remitted by setting it off against a debt due from that bank and giving credit for it in the account." Central Trust Co. of Illinois v. Hanover Trust Company, 242 Mass. 265–267, 136 N.E. 336, 337.

The Supreme Judicial Court of Maine has recently had under consideration a parallel case involving the deposit with the Peoples Ticonic Bank by another customer of a bond for collection due March 1, 1933, the banks, dates, and all subsequent happenings being otherwise exactly the same as in this case, and has held that the customer was a general creditor and not entitled to priority. That court said, referring to banking methods and customs: "Such modern usages and customs are tacitly assented to by everyone who makes use of this system of collection unless there is express stipulation to the contrary, and are implicit in the contract to collect and remit. The bank which makes the collection is not required to keep the proceeds segregated as

384

the claimant's property, but may mingle the funds with its own and make itself debtor for the amount received. As soon as the proceeds become a part of the funds of the collecting bank under this arrangement, the claimant's right to control it as specific property is gone, and he has instead the right to recover a corresponding sum of money." Cooper, Commissioner, v. Fidelity Trust Company (In re Leighton, Petitioner), 190 A. 732, 733. See Jennings v. United States F. & G. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248.

■ The plaintiff here attempts to distinguish his situation from that of Leighton, above referred to, and from the ordinary case of collection by a bank in several ways:

1. He says that there was an agreement that he should be paid the money "in hand" when collected. The evidence is to the effect that on giving a receipt for the bond, which the plaintiff took into the bank, a clerk in the bank indicated in a receipt he drew that the proceeds when collected were to be credited to the plaintiff, but the latter informed the clerk that he did not want the proceeds credited, but wanted them paid to him in hand. Words indicating that the proceeds should be credited to the account of the plaintiff were then erased from the receipt. The plaintiff explained, on further questioning at the trial, that he spoke in a joking way about having the cash in hand, but that he wanted payment in some form, either check or cash, simply desiring not to deposit the proceeds in the bank.

From the evidence on this point I find no agreement or understanding other than that when collection was made the amount should not be credited to the plaintiff's account but should be paid to him directly. He testified that any payment, cash or check, would have been satisfactory. "Whether it was a check or money, it meant the same to me. I didn't want to deposit it in the bank at all. That is why I said that."

■ 2. The plaintiff claims that a trust ex maleficio was created by the methods used for collecting the bond, presumably claimed to be without his authority. But there were no directions or agreement about that, one way or the other, and the plaintiff, taking advantage of the bank's facilities for collection, is presumed to assent to the usual banking methods in such circumstances.

■ 3. Some suggestion was made as to a common stock ownership of the Peoples Ticonic Bank and the Fidelity Trust Company, but it is not perceived that such ownership, if it existed, would have any bearing on the rights of the plaintiff in this case.

■ The fact should not be lost sight of that the money collected in New York never actually reached the hands of the receiver of the Peoples Ticonic Bank. It remained, with other funds and the proceeds of other collections, in the total to the credit of the Peoples Ticonic in the Fidelity Trust Company. The fact, as shown, that the Fidelity Trust has paid the receiver of the Peoples Ticonic a dividend of 35 per cent. on the balance found by the state court to be due the Peoples Ticonic from the Fidelity does not affect the legal status of the plaintiff.

■ There is no tracing of specific funds into the hands of the receiver. Jennings v. United States F. & G. Co., supra.

■ The facts show that the collection was made in the usual course of business; that the money collected reached the Fidelity Trust Company two days at least before it closed and was mingled with other funds of the Peoples Ticonic on deposit with the Fidelity, according to the customary method of handling such transactions, as was understood, actually or impliedly, by all parties. The Peoples Ticonic thereupon became a debtor to the plaintiff for the amount of the collection.

The result is that the plaintiff cannot sustain his claim to a priority payment of the whole amount. He is, however, a general creditor of the bank, and in common with the other general creditors is entitled to receive such distributions as are made under the authority of the comptroller, as provided by statute. As this action cannot be sustained, judgment must be for the defendant with costs.