## SCOTT COUNTY, TENN., v. KENT.

### No. 7705.

Circuit Court of Appeals, Sixth Circuit.

June 8, 1938.

J. A. Fowler, of Knoxville, Tenn. (Howard H. Baker, of Huntsville, Tenn., and J. A. Fowler, H. G. Fowler, and S. F. Fowler, all of Knoxville, Tenn., on the brief), for appellant.

Estes Kefauver, of Chattanooga, Tenn. (J. B. Sizer, Estes Kefauver, and Sizer, Chambliss & Kefauver, all of Chattanooga, Tenn., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Scott County, Tennessee, and its trustee filed a bill in equity praying for preference in the assets of an insolvent bank. The District Court dismissed the bill.

The sole question presented is whether the deposit of a draft in the First Trust & Savings Bank of Oneida, Tennessee, created an agency relationship or a debtor-creditor relationship between the depositor and the bank.

The draft in question, in the amount of $50,687.01, was drawn by the Cincinnati, New Orleans & Texas Pacific Railway Company in payment of taxes. The trustee received the draft on February 24, 1933, and stamped it "Pay to the order of First Trust & Savings Bank, Oneida, Tennessee. Roscoe Byrd, Trustee," endorsed it "Roscoe Byrd, Trustee," and attached it to a deposit slip furnished by the bank, which contained the following paragraph:

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondent nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

The draft and slip were delivered to the bank on February 25, 1933, and the amount thereof was at once credited to the commercial account of the trustee. The draft, with other items, was forwarded to the bank's correspondent, the Chattanooga National Bank, which in turn forwarded it to the Central Trust Company of Cincinnati, Ohio. On February 27, 1933, the draft was honored, and the proceeds thereof credited to the Chattanooga National Bank, which on the same date credited it to the account of the Oneida Bank, and so advised the latter.

As of February 28, 1933, appellants' balance in the Oneida Bank included credit for the draft. On March 2, 1933, both the Oneida and the Chattanooga Bank were closed by gubernatorial proclamation, and the moratorium was later extended by presidential proclamation. The Chattanooga Bank was not allowed to reopen as a solvent institution, and resumed banking operations on March 14, 1933, under a conservator. The proceeds of the draft remained in the possession of the Cincinnati Bank until they were drawn out by the conservator of the Chattanooga Bank. The Oneida Bank was permitted to reopen upon certain conditions, which included its improving its financial state by "freezing" certain accounts, including that of the county, so that they would not be subject to check. The trustee, therefore, on March 22, 1933, accepted from the Oneida Bank its certificate of deposit for $55,000, payable six months after date, which included the amount of the draft in question. On August 14, 1933, subsequent to the payment of a dividend of forty per cent. (the only one made) by the Chattanooga Bank, the trustee surrendered the certificate of deposit, receiving a second certificate in the amount of $29,767.43. His account as trustee was at the same time credited with $25,332.57, subject to check. As of March 25, 1933, the trustee's credit balance in the Oneida Bank was approximately $72,500.

The District Court found that a debtor-creditor relationship arose from the endorsement of the draft without restriction and the receipt of credit for the amount thereof, which relationship was recognized by the parties through the issuance by the Oneida Bank and acceptance by appellants of the two certificates of deposit.

Appellants assert that the draft was deposited for collection only, and remained at all times the property of the county; that the funds of the Chattanooga Bank were augmented thereby, and that when the conservator took over the assets of the Chattanooga Bank he acquired them im-

pressed with a trust in the amount of the draft.

 We think the judgment of the District Court was clearly correct. Even if the collecting bank had been agent for the depositor, from the time of the collection of the draft on February 27, 1933, the relationship became one of debtor and creditor. Jennings, Receiver v. U. S. Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248. But this was not the case. It is not necessary to discuss in detail the relationship between the correspondent banks and the various steps taken after February 25, 1933, for the deposit of the draft was the ordinary deposit in a commercial account, whereby the draft became the property of the Oneida Bank. It was endorsed without restriction, and the amount was credited to the trustee's account, subject to withdrawal by check. There was no agreement that either the Oneida Bank or the Chattanooga Bank should receive the draft for collection only. In absence of agreement to the contrary, the Oneida Bank was invested with title to the paper. City of Douglas v. Federal Reserve Bank of Dallas, 271 U.S. 489, 46 S.Ct. 554, 70 L.Ed. 1051.

 Appellants urge that such a special agreement existed, and that it is indicated by the original deposit slip in the Oneida Bank and the forwarding memorandums, which stated in effect that certain items, including the draft, were enclosed for collection and credit. But these provisions and statements are not determinative. The restrictions of the deposit slip, which is in the usual form, are for the benefit of the bank and not of the depositor [Cf. Pearson v. Brennan, 1 Cir., 75 F.2d 958], and merely outline the method by which the bank may exact prompt payment from the endorser in case the item is uncollected. Cf. Nomland v. First National Bank of Kansas City, Mo., 8 Cir., 64 F.2d 399. As to a similar notation on a deposit slip, this court, in Ogdin v. Goodwin, 76 F.2d 196, held that the notation did not invalidate the bank's title, and stated that the deposit slip indicated only that the bank would charge the check back to the depositor if it were not collected, and not that credit was not given at the time of the deposit. This record shows without controversy that such credit was given. A custom or agreement to charge paper back to the depositor in event of dishonor under such

circumstances does not make the collecting bank an agent of the depositor. Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482. We know of no Tennessee decisions in conflict with the rules here announced.

It is true that an arrangement existed between the trustee and the Oneida Bank that the trustee would not check against the deposit until the draft cleared. This was necessitated by the restrictions of the deposit slip, and also by considerations of mutual convenience in dealing with a draft of this size. But the contention that this understanding made the Oneida Bank agent for the county instead of its debtor is negatived by numerous acts of the trustee in which he recognized the ownership of the Oneida Bank in the draft. In addition to accepting the two certificates of deposit above described, he made no proof of claim against the Chattanooga Bank, nor did he demand that any part of the dividend paid by this bank be paid to the county. In fact he did not communicate with the Chattanooga Bank.

We conclude that the evidence clearly shows that the deposit was general; that title to the draft passed to the Oneida Bank on endorsement, and that no trust was impressed upon the proceeds thereof.

The decree is affirmed.