## RENO NAT. BANK OF RENO, NEV., et al., v. SEABORN.

### No. 8805.

Circuit Court of Appeals, Ninth Circuit.

Oct. 17, 1938.

N. J. Barry, of Reno, Nev. (George P. Barse and John F. Anderson, Attys. for Comptroller of Currency, both of Washington, D. C., of counsel), for appellants.

William M. Kearney, of Reno, Nev., and Merwyn H. Brown, of Winnemucca, Nev., for appellee.

Before GARRECHT, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in favor of appellee, Receiver of the Winnemucca State Bank and Trust Company, for the amount of the latter's credit balance in the appellant Reno National Bank, decided by the district court to be money held in trust for the Winnemucca Bank.

The facts are undisputed. The Winnemucca Bank had on deposit in the Reno Na-

tional Bank the sum of $2514.82. The Winnemucca Bank failed and one E. J. Seaborn, Bank Examiner of the State of Nevada, became its receiver and succeeded to the legal title to the credit balance in the Reno National Bank. He was required by the law of Nevada, after he had "collected and realized" such credits as were due his bank, to deposit them in a Nevada state bank.

Receiver Seaborn first made a written demand on the Reno Bank for payment to him of the Winnemucca Bank's credit balance. Not receiving it, he demanded its transfer to a Nevada state bank, the United Nevada Bank to his account as receiver. This the Reno Bank promised to make but did not. Thereafter the Reno Bank became insolvent and the United States Controller of Currency appointed W. J. Tobin its receiver. The Reno Bank at all times had sufficient general assets to pay the Winnemucca Bank's credit balance. Nothing appears in the Reno Bank's accounts or records segregating the credit balance, unless Seaborn's written demand for its payment and the failure to pay him constitute such a segregation.

Receiver Seaborn then filed his claim in the Reno Bank receivership for the full amount of the credit balance, basing it on the theory that the refusal of the Reno Bank to pay the credit balance created a trust for its amount, thus segregating that amount from the Reno Bank's general assets. The claim was rejected and Seaborn sued.

The district court, upon the above facts, concluded that the failure to pay the credit balance on demand "had the effect of changing the legal status of the parties in interest from that of debtor and creditor to that of trustee and cestui que trustent, and that said deposit upon such demand, agreement, and failure to comply therewith, immediately became a trust fund held by the Reno National Bank of Reno, Nevada, and that the assets of the Reno National Bank of Reno, Nevada, coming into the possession of the defendant, W. J. Tobin, Receiver thereof, were augmented by the trust fund commingled therewith," and that Receiver Seaborn should have judgment for the amount of the credit balance and costs. The Reno Bank and Receiver Tobin brought this appeal.

Appellants' contentions here are that no trust relationship was created either (a) because of the failure, on the demand of Receiver Seaborn, to pay to him the credit balance of the Winnemucca Bank's deposit, or, (b) because of a failure of the Reno Bank to perform its promise to Seaborn to transfer the amount to the United Nevada Bank, thus preventing Seaborn from collecting or realizing the credit balance, after which he has a statutory obligation to deposit it in a state bank.

The creditor rights of a depositor of a national bank, by virtue of his loan to the bank and the effects of the conduct of the bank as altering such rights, are determined by the law of the state of the deposit, in the absence of a federal statute creating a different relationship. There is no underlying general federal law determining such rights (Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), and no federal statute denying to a cestui his right against a bank as its trustee, where, in the course of its business prior to the receivership, such a trust relationship has been created by the conduct of the bank.

No distinction can be made regarding the controlling applicability of the state law to such trust relationship, existing prior to the receivership, and the controlling state law in suits on mortgages and pledges made during the solvency of the bank. The cases holding that state laws cannot determine what preferences should be given in the distribution of an insolvent bank's assets, have no applicability to the question here of the character of the assets prior to and at the time the bank ceases business. No need of federal uniformity exists requiring that federal banks in each state shall conduct their ordinary banking business exactly as in every other state. The stockholders and depositors in a Missouri national bank are not prejudiced because the current banking business in Nevada is controlled by laws differing from Missouri. Jennings v. U. S. Fid. & Guar. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248.

The question here then is, whether, under the law of Nevada, the conduct of the Reno National Bank prior to the receivership had converted the credit of the depositor into a trust fund. Unless it is so segregated from the general assets of the bank, the appellee depositor has no more than its claim to a pro rata share in the distribution of such assets under the provisions of the Federal Banking Act, 12 U.S.C.A. § 21 et seq.

Appellee's brief cites no Nevada cases, although Erie Ry. Co. v. Tompkins, su-

pra, was decided nearly two months before it was filed, and although it claims the Nevada law as controlling the nature of the obligation to carry out the promise to transfer the Winnemucca Bank's balance to the United Nevada Bank.

Appellants cite Lyon County Bank Mort. Corp. v. Walker River Irr. Dist., 57 Nev. 485, 67 P.2d 1010, in which case the Nevada Supreme Court considered the question whether the transfer of part of a general deposit credit to a separate account for a specific purpose declared by the depositor created a trust relation which, on the bank's insolvency, entitled the depositor to priority in the amount of the specific purpose account.

The opinion cites with approval and holds in accordance with Las Vegas Savings Bank v. Casey, D. C., 15 F.Supp. 412, 414, that "It is uniformly the holding of the court on this subject, that, in order to entitle one to preferential payment out of the assets of an insolvent bank, three essential elements must appear: (1) A trust relation; (2) augmentation of the assets of the bank; (3) the fund traced into the hands of the receiver." 67 P.2d 1016.

The Nevada court's opinion is to the effect that no trust relation was created and that there was no augmentation of assets.

The court's view that no trust relation was created is based on the absence of facts which would justify the implication of such relationship. The court attaches significance to the continuing right of the depositor to check the deposit credit to any person despite his declared intent to pay it in discharge of a particular obligation and cites with approval the statement made in Re Interborough Consol. Corp., 2 Cir., 288 F. 334, 347, 32 A.L.R. 932, to the effect that "If a fund is deposited in a bank for a specific purpose, but subject to the depositor's check, it remains the property of the depositor, and is subject to the right of set-off. * * * Such a right is necessarily inconsistent with the existence of a trust".

Pursuing the reasoning of the Nevada Supreme Court in the Lyon County Bank Mort. Corp. Case, we hold that Receiver Seaborn's instructions to transfer the Winnemucca Bank's credit balance and the agreement of the Reno Bank to do so did not create a trust relation between the parties. Until transferred, the credit balance remained subject to Seaborn's check, and we find nothing in the order and agreement

to transfer which would give rise to an implied in fact trust.

Nor are we able to find support in reason or authority for the holding in the Missouri case of Kahmann v. Moberly, 229 Mo. App. 346, 77 S.W.2d 858, that the failure on demand to pay a credit balance creates a trust. A debtor does not cause a conversion of his debt by nonpayment.

We are surprised with the suggestion that a depositor has, instead of a credit, either a legal or equitable right to "money" in the "vaults of the bank". An ordinary bank deposit creates no more than a debtor-creditor relation between the bank and the depositor. Jennings v. U. S. Fid. & Guar. Co., supra. Hence the failure of the bank to pay the debt on demand or failure to make a promised transfer of the amount of the debt to another bank, there to be deposited to the account of the creditor, is no more than the failure to pay any debt.

Nor is there established the second requirement of the Lyon County Bank Case, i. e., that the transaction should cause "augmentation of the assets of the bank". The failure to pay the debt no more enhances the bank's assets than the failure to pay his rent adds to the assets of the tenant. Mere failure to deduct, without change of the obligation, does not constitute addition.

The law of Nevada in these respects is in accord with the decisions of the United States Supreme Court. Blakey v. Brinson, 286 U.S. 254, 263, 52 S.Ct. 516, 518, 76 L. Ed. 1089, 82 A.L.R. 1288; Jennings v. U. S. Fid. & Guar. Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248.

Appellee contends that a constructive trust, ex maleficio, arose because the Reno Bank failed to transfer the credit balance to the United Nevada Bank, since it was charged with knowledge of the Nevada statute requiring the receiver of the Winnemucca Bank to deposit in some such state bank any of its funds collected by him after its insolvency. The statute in question provides (§ 707, Nevada Compiled Laws 1929): " * * * The moneys collected and realized by the examiner shall be from time to time deposited in one or more banks of deposit, organized under the laws of this state, and designated by the state banking board, which bank or banks shall give bonds to secure the payment of such deposits on demand."

Here no obligation is imposed on the receiver prior to his possession of the Winne-

mucca Bank's money by collection or other realization and a fortiori no obligation on the Reno Bank. There is no merit in this contention.

The judgment appealed from is reversed.

Reversed.