In the Matter of the Involuntary Bankruptcy of MID–ISLAND SERVICE CORP., a/k/a Mid-Island Coverage Corp., and of the Adversary Proceeding Entitled:

Fred NOZ, as Trustee,
Plaintiff-Appellant,

v.

COLUMBIAN BROKERAGE, INC.,
Defendant-Appellee.

78 C 2489, 76 B 1107.

United States District Court,
E. D. New York.

July 12, 1979.

Fred Noz, New York City, for appellant.

S. Michael Weisberg, New York City, for appellee.

## DECISION

NEAHER, District Judge.

This is an appeal by the trustee of Mid-Island Service Corp. ("the bankrupt") from a decision of the bankruptcy court holding that the bankrupt's payment of $29,260.09 to Columbian Brokerage, Inc. ("Columbian Brokerage") within four months of its involuntary bankruptcy was not a voidable preference under section 60 of the Bankruptcy Act, 11 U.S.C. § 96. The adversary proceeding instituted by the trustee against Columbian Brokerage was decided upon an agreed statement of facts, which reveals the following.

The bankrupt, through its chief executive officer and principal stockholder John J. Devine, held itself out as agent of Lumley Dennant & Co., Inc., corresponding brokers for Lloyds of London, Ltd., and authorized in that capacity to accept the placement of insurance contracts from brokers. Columbian Brokerage entered into a business relation with the bankrupt and during the period from December 16, 1975, to January 7, 1976, remitted to the bankrupt $29,260.09 in insurance proceeds; the bankrupt issued

corresponding insurance binders. On December 19, 1975, another insurance broker, Lowell Serhus, doing business as Viking Insurance Agency ("petitioning creditor"), entered into an agreement with the bankrupt and, on December 22, transferred $22,-500 to the bankrupt for the purpose of procuring insurance coverage. It was later discovered that neither the bankrupt nor John J. Devine were authorized agents for Lumley Dennant & Co., Inc. or Lloyds of London and that the binders issued by the bankrupt were bogus.

Columbian Brokerage brought criminal charges against Devine and demanded return of the premiums. Devine was convicted of fraud; the sum of $29,260.09 was returned to Columbian Brokerage within four months of the filing of an involuntary petition by the petitioning creditor.[1] Upon learning of the payment to Columbian Brokerage, the petitioning creditor obtained a pre-petition judgment against the bankrupt for $22,500 and filed a petition in bankruptcy after discovering only $130.74 could be recovered from the bankrupt's account.

The trustee claims there was a preferential transfer on the theory that the petitioning creditor's claim also arises from fraud and embezzlement of funds held in trust and that one victim should not be made whole while others suffer. Columbian Brokerage defends on the basis that its relationship with the bankrupt never matured into the status of a debtor-creditor and thus the bankrupt's transfer of the $29,260.09 was not a transfer of the bankrupt's property as required by section 60 but was merely the return of Columbian Brokerage's money held in constructive trust. It claims that upon rescission of the contract because of the fraud and misrepresentation it was entitled to the return of its money, unlike the petitioning creditor which reduced its claim to judgment.

The bankruptcy court agreed with Columbian Brokerage and determined that the funds received by the bankrupt resulted in the creation of a constructive trust. The court then applied the principle that one who has been induced to part with his property through fraud has an election of remedies: he may rescind the transaction and recover his property or may affirm the transaction and bring an action for damages. See *Fisher v. Shreve, Crump and Low Co.*, 7 F.2d 159 (D.Mass.1925); *In re Rhine*, 241 F.Supp. 86 (D.Colo.1965). Since the petitioning creditor had obtained a pre-petition judgment against the bankrupt, the court found that he had ratified and reaffirmed a debtor-creditor relationship with the bankrupt in contrast to Columbian Brokerage which precluded such a status by rescinding the contract prior to the filing of the bankruptcy petition. The court thus held the transfer to Columbian Brokerage not subject to a claim of voidable preference and section 60 inapplicable.

■ With this much of the bankruptcy court's analysis we are in agreement, although we are not unaware of the race to rescission and recapture of funds remaining in the constructive trust that is encouraged by such a rule. The inequity which the appellant trustee sees in permitting similarly situated parties (both innocent victims of the bankrupt's fraud) disproportionate access to funds held in constructive trust is remedied, at least in part, however, by another principle of law which the bankruptcy court found inapplicable in these circumstances. Since this court disagrees with the conclusion below that Columbian Brokerage need not "trace" its property to the funds held in trust because dollars are fungible, the decision of the bankruptcy court is reversed and remanded for further proceedings not inconsistent with this decision.

■ When one is fraudulently induced to enter into a contract, the contract is voidable and the injured party has, as mentioned above, alternative remedies: he can affirm the contract and bring a damage action, or he can rescind and recover his property. Property held in trust because of fraud can only be reclaimed, however, if it can defi-

---

1. Because a check in the amount of $4,559.84 was stopped by Columbian Brokerage before payment was made, the balance in issue as an alleged preferential transfer is $24,700.25.

nitely be traced as the property taken by the fraud. *Morris Plan Industrial Bank of N. Y. v. Schorn*, 135 F.2d 538 (2 Cir. 1943); *Malone v. Gimpel*, 151 F.Supp. 549 (N.D.N.Y.1956), *aff'd* 244 F.2d 954 (2 Cir. 1957); *Ullman v. N. Sobel, Inc.*, 47 F.2d 612 (S.D.N.Y.1931). See 4A Collier on Bankruptcy ¶ 70.25[2] (14th Ed. 1978). See also *Feinblatt v. Block*, 456 F.Supp. 776 (D.Md.1978).

While this principle is easily applied in certain circumstances where, for example, the property is readily identifiable, difficulties arise when the property consists of money. The bankruptcy court held, relying upon *Jennings v. United States Fidelity & Guaranty Co.*, 294 U.S. 216, 224, 55 S.Ct. 394, 79 L.Ed. 869 (1935), that money is fungible and need not be traced by the beneficiary of a constructive trust. *Jennings*, however, did not speak to the circumstances of a bankruptcy proceeding and thus the Supreme Court did not consider the effect of section 60's requirement that there be a diminution of the *bankrupt's estate* before a voidable preference can be declared. See 3 Collier on Bankruptcy ¶ 60.20 (14th Ed. 1978). Thus, the underlying rationale for requiring that the beneficiary trace his property in these circumstances is that he should not be permitted to remove property from the *bankrupt's estate* because removal of untraced property might represent a voidable preference under the Act. There is no reason why the requirement should not be fully applicable where the property involved is money. See *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1923); 4A Collier on Bankruptcy ¶ 70.25[2] at 359–60 (14th Ed. 1978). See also *In re Dilbert's Leasing & Development*, 241 F.Supp. 672 (E.D.N.Y. 1964), *aff'd*, 345 F.2d 172 (2 Cir. 1965).

In somewhat analogous circumstances, the Court in *Cunningham v. Brown, supra,* stated that:

"They [the defendant lenders] could have followed the money wherever they could trace it and have asserted possession of it on the ground that there was a resulting trust in their favor, or they could have established a lien for what was due them in any particular fund of which he had made it a part. These things they could do without violating any statutory rule against preference in bankruptcy, because they then would have been endeavoring to get their own money, and not money in the estate of the bankrupt. *But to succeed they must trace the money and therein they have failed.*" 265 U.S. at 11, 44 S.Ct. at 406. (emphasis supplied).

Thus, the burden of ascertaining and tracing the money held in trust is on Columbian Brokerage. See 4A Collier on Bankruptcy ¶ 70.25[2] at 358 (14th Ed. 1978). In relieving Columbian Brokerage of this burden, the bankruptcy court erred and the case must be remanded for such a determination.

We express no opinion whether Columbian Brokerage will be able to sustain its concededly difficult burden of tracing the money it claims was taken by fraud since this matter should properly be decided by the bankruptcy court in the first instance. To the extent it is unable to do so, Columbian Brokerage "becomes merely a creditor to the extent of . . . [its] loss and a payment to . . . [it] by the bankrupt within the prescribed period of four months is a preference." *Cunningham v. Brown, supra*, 265 U.S. at 12, 44 S.Ct. at 426.[2] We note finally that in the circumstances of the *Cunningham* case the Court demonstrated a displeasure with those among equally innocent victims of fraud who are "successful in the race of diligence." In the Court's view, "[w]hether they sought to rescind, or sought to get their money as by the terms of the contract, they were, in their inability to identify their payments, creditors and nothing more." 265 U.S. at 13, 44 S.Ct. at 427.

---

**2.** It is also unclear whether there are other potential claims by beneficiaries of the constructive trust created. Thus, the bankruptcy court might be required to decide as among competing claimants to a *trust* fund who is entitled to take and in what proportion before proceeding to a determination of distribution of funds of the *bankrupt's estate* remaining after the process of tracing is completed.

Accordingly, the decision of the bankruptcy court is reversed and remanded for further proceedings not inconsistent with this decision.

SO ORDERED.