**In the Matter of DILBERT'S LEASING & DEVELOPMENT CORP., Debtor.**

**In the Matter of DILBERT'S QUALITY SUPERMARKETS, INC., Debtor.**

**Nos. 63 B 148, 62 B 920.**

United States District Court
E. D. New York.

Oct. 13, 1964.

Ira J. Lefton, Jamaica, N. Y., for petitioner, J. J. Fourth Sales Corp.

Daniel A. Shirk, New York City, and Joseph Jaspan, Brooklyn, N. Y., for trustee; Daniel A. Shirk, New York City, of counsel.

ABRUZZO, District Judge.

This is a motion on an order to show cause why the Trustee for the debtor should not pay over to J. J. Fourth Sales Corp., the petitioner, the sum of $3,333.-34 deposited by tenant pursuant to paragraph 41 of a lease dated July 31, 1962, between Dilbert's Quality Supermarkets, Inc., a tenant under the lease of Dilbert's Leasing & Development Corp., as landlord, and J. J. Fourth Sales Corp., as tenant.

On July 31, 1962, Dilbert's Quality Supermarkets, Inc. (hereinafter referred to as Quality), as a tenant under a lease with Dilbert's Leasing & Development Corp. (hereinafter referred to as Leasing), entered into a written lease as landlord with J. J. Fourth Sales Corp., as tenant for the store premises now known as 925 Walt Whitman Road, Huntington, New York.

On July 31, 1962, Leasing as prime landlord entered into an attornment agreement with the petitioner, a tenant of Quality, pursuant to the above mentioned lease, which attornment agreement did provide:

That in the event of a default of Quality in any of the terms and conditions of its lease with Leasing on its part to be performed, upon notification to J. J. Fourth Sales Corp., Leasing would stand as landlord in the place and stead of Quality.

That paragraph 31 of the lease between Quality and the petitioner hereinbefore referred to provided as follows:

"31. Tenant has deposited with Landlord the sum of *$6,666.66 as security* for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Landlord may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the *security shall be returned to Tenant* after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Landlord. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Landlord shall have the right to *transfer the security* to the vendee or lessee and Landlord shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Landlord solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Landlord. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. See Paragraph 41 of the Rider." (Italics supplied.)

Paragraph 41 of the rider to the lease provided as follows:

"41. The Tenant herein agrees that simultaneously with the execution of the within Lease it shall pay to the Landlord the sum of Ten Thousand ($10,000) Dollars. Of the said payment the sum of Three Thousand Three Hundred Thirty Three and 34/100 ($3,333.34) Dollars shall be applied in payment of the rental for the premises leased herein for the *month of August 1972*. The balance of Six Thousand Six Hundred Sixty Six and 66/100 ($6,666.66) Dollars shall be retained by the Landlord as security pursuant to Paragraph 31 of the within Lease. Notwithstanding anything else to the contrary contained in the said Paragraph 31, the Landlord shall deposit the sum of Six Thousand Six Hundred Sixty-Six and 66/100 ($6,666.66) Dollars in an interest bearing account in any duly authorized bank or savings and loan institution and shall be permitted to withdraw the sum of Six Hundred Sixty Six and 67/100 ($666.67) Dollars at the end of each Lease year, which sum of Six Hundred Sixty Six and 67/100 ($666.67) Dollars represents ten (10%) percent of the principal deposited into the said account. The said withdrawal of Six Hundred Sixty Six and 67/100 ($666.67) Dollars shall

be applied as a credit toward the rent of the next succeeding month. In addition thereto the Landlord shall at the end of each Lease year forward to the Tenant a statement of the interest earned in said account, which interest shall be and shall remain the property at all times of the Tenant. The Tenant may direct the Landlord to apply the said interest as a credit against rent, to withdraw the said interest to pay the said amount to the Tenant, or that the said interest be left on deposit. If in the event of a condemnation of all or part of the herein Leased premises more particularly described elsewhere in this Lease a proportionate share of the said sum deposited as security shall be refunded to the Tenant in the same ratio as the area lost by condemnation shall bear to the entire premises herein leased."

That subsequent to July 31, 1962, J. J. Fourth Sales Corp. was notified in writing to make all payments of rent due or to become due under the terms of the lease dated July 31, 1962, between Quality and J. J. Fourth Sales Corp. to Leasing as landlord in the place and stead of Quality.

That on or about the 6th day of August, 1963, an order was entered by this Court in the within entitled matters granting the petition of Garlor Associates, Inc., to cancel a ground lease assigned to Leasing because of the insolvency of said Leasing which ground lease covered premises and improvements demised to J. J. Fourth Sales Corp. under the lease of July 31, 1962; and said order further granted the application of the Trustee in Bankruptcy of Quality and Leasing to assign said ground lease to Garlor Associates, Inc., for the payment of a sum of money, to make certain adjustments with Garlor Associates, Inc., and to turn over all rents collected from the premises as of July 1, 1963.

That J. J. Fourth Sales Corp. paid the July rent to Leasing in July when due

and prior to the entry of the aforesaid order of this Court.

That rent for the premises due August 1, 1963, was paid by J. J. Fourth Sales Corp. to Garlor Associates, Inc., who, pursuant to the order of this Court dated August 6, 1963, became vested with all the rights, title, interest and benefits that formerly were of Leasing and of the Trustee thereof in and to the premises. Petitioner retained possession of these premises in August, 1963.

That subsequent to August 26, 1963, demand was made upon the Trustee for the return of monies paid and deposited by J. J. Fourth Sales Corp. pursuant to paragraphs 31 and 41 of the lease heretofore existing between J. J. Fourth Sales Corp. and Leasing.

That on or about the 8th day of November, 1963, the Trustee turned over to Garlor Associates, Inc., to the account and credit of J. J. Fourth Sales Corp. the sum of $6,875.00, which sum represented the basic sum of $6,666.66 deposited under paragraph 31 of the lease, together with accumulated interest.

That the sum of $3,333.34 was not surrendered, transferred or turned over to the petitioner.

The petitioner states that the sum of $10,000 deposited by it as provided in paragraph 41 of the lease constituted all security money, anything contained in paragraph 31 of the lease notwithstanding, and that paragraph 41 merely set up the mechanics of handling the deposit money.

The lease expressly states that the sum of $6,666.66 is deposited by the tenant as security under the lease (see paragraph 31 of the lease) and this is again confirmed in paragraph 41 of the lease.

No issue exists as to the fact that the Trustee returned the security deposit of $6,666.66, together with accrued interest, to Garlor which Quality had deposited in a separate interest-bearing account. The issue arises as to the balance of $3,333.34. The Trustee was appointed on March 14, 1963, the same date Dil-

bert's Quality Supermarkets, Inc., Dilbert's Leasing & Development Corp. and County Fair Packing Corp. went into Chapter X from Chapter XI. The Trustee found at that time that the $3,333.34 was not segregated or earmarked as part of the security deposit under the Lease, nor was it carried as part of the security deposit on the books of Quality. This money was commingled with the regular funds of the debtor and never segregated or earmarked during his tenure as Trustee which is to the present date.

■ Since money deposited under a lease as security constitutes trust funds, it must be traceable and identifiable as such to be recoverable from a Trustee. This is especially so where an alleged trust obligation arose prior to the bankruptcy proceeding as is the case here. In re Airline-Arista Printing Corp., D. C., 156 F.Supp. 403, aff'd 267 F.2d 333 (C.A.2d).

Therefore, the sum of $3,333.34 was not security money under the lease and petitioner is not entitled to the return of this money as a security deposit.

■ The petitioner states further that if the Court does not consider the $3,333.34 as security then it must consider it as payment in advance for the last month of the lease, to wit, August, 1972. It states that, by the order of this Court entered August 6, 1963, the lease between Garlor and Leasing as prime tenant was cancelled and terminated and the underlying lease between Leasing and J. J. Fourth Sales Corp. was terminated and cancelled by operation of law, and the order of this Court specifically provided that Garlor would not be bound by any outstanding leases of the tenants of Leasing. Therefore, the last month of the term of the lease, due to the default of the landlord, was accelerated to July, 1963, and the tenant, J. J. Fourth Sales Corp., has therefore paid rent for the month of July, 1963 twice—once by reason of its payment by check to Leasing during July, 1963, and prior to the Court's order and the second time by virtue of the $3,333.34 as provided under paragraph 41 of the lease.

The order of the Court dated August 6, 1963, was based upon a settlement agreement between Garlor and Leasing. Part of the settlement agreement was that the July, 1963, rent of all tenants, including the petitioner, was to be credited to Garlor which was done. Leasing did not keep the July, 1963, rent.

The rent for August, 1972, which was accelerated by the order of this Court dated August 6, 1963, is money which is due the petitioner. The lease created a debtor-creditor relationship as to the rent money for August, 1972. Leasing "owed" this money to the petitioner and when the lease was accelerated it became due but petitioner cannot be heard to say it paid the July, 1963, rent twice. The debtor-creditor relationship is not one in which the petitioner is entitled to a preference. The petitioner is a general creditor of Leasing. It filed a claim as a general creditor on August 29, 1963, which included the $3,333.34 it now seeks to recover. This motion was filed on March 4, 1964. There is a hiatus of six months.

Based on the foregoing, the petitioner's motion is denied.

Submit order in accordance with this opinion.