GENESEE WESLEYAN SEMINARY, Respondent, v. UNITED
STATES FIDELITY AND GUARANTY COMPANY, Appellant.

Principal and surety — bond — banks and banking — trust —
deposit by treasurer of corporation of corporate funds in his pri-
vate bank — duty to keep fund intact, apart from other moneys
and subject to trust — knowledge by corporation of deposit
insufficient to show consent that treasurer cease to be fiduciary
— action on surety bond — evidence that treasurer mingled
corporate funds with those of other depositors and used same
for own purposes sufficient to sustain finding of embezzlement.

1. The treasurer of a corporation who collects its money and, with
its knowledge, deposits it with himself as banker is subject to a con-
tinuing duty to keep the fund intact, apart from other moneys and
subject to a trust. Knowledge by the corporation of the deposits in
the bank is insufficient to show consent that its treasurer should cease
to be a fiduciary and become a borrower.

2. In an action, therefore, by the corporation to recover upon a
bond whereby the defendant as surety bound itself to make good to
plaintiff any loss arising from the fraud or dishonesty of its treasurer
amounting to larceny or embezzlement, evidence that he deposited
corporate funds in his private bank, where they were mingled with
funds of other depositors, and used the entire amount as if it had been
his own, until his bankruptcy resulted in a large loss to plaintiff,
sustains a finding that his use of the money for himself was fraud and
dishonesty amounting to embezzlement within the meaning of the bond.

*Genesee Wesleyan Seminary* v. *U. S. Fidelity & Guaranty Co.*, 219
App. Div. 764, affirmed.

(Argued November 28, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division
of the Supreme Court in the fourth judicial department,
entered March 17, 1927, modifying and affirming as
modified a judgment in favor of plaintiff entered upon
the report of a referee.

*George A. Carnahan* for appellant. As matter of law its
treasurer's acts in depositing plaintiff's moneys, mingling
them with those of other depositors, and using them in
the banking business were not acts of fraud or dishonesty,

nor did they amount to larceny or embezzlement. (*People ex rel. Murphy* v. *Crane*, 80 App. Div. 202; *People* v. *City Bank of Rochester*, 96 N. Y. 33; *People* v. *Meadows*, 199 N. Y. 1; *People* v. *Barnes*, 158 App. Div. 712.)

*Erwin E. Shutt* for respondent. When plaintiff's treasurer mingled seminary moneys with his own and with the deposits of others, using and loaning the same in his own name for his own profit, he misappropriated, converted and embezzled them within the meaning of the bond. (*People ex rel. Murphy* v. *Crane*, 80 App. Div. 202; *People* v. *City Bank of Rochester*, 96 N. Y. 33; *People* v. *Barnes*, 158 App. Div. 712; *People* v. *Meadows*, 199 N. Y. 1; *Britton* v. *Ferrin*, 171 N. Y. 235; *Industrial General Trust Co.* v. *Tod*, 170 N. Y. 233; *Matthews & Co.* v. *Employers' Liability Assur. Corp.*, 127 App. Div. 195; 195 N. Y. 593; *Swisher* v. *Maryland F. Co.*, 164 Ill. App. 243; *Citizens' Trust, etc., Co.* v. *Globe Ins. Co.*, 229 Fed. Rep. 326.) Plaintiff's treasurer was guilty of larceny under section 1290 of the Penal Law of this State. (*People ex rel. Murphy* v. *Crane*, 80 App. Div. 202; *People* v. *Lammerts*, 164 N. Y. 144; *People* v. *Dimick*, 107 N. Y. 13; *People* v. *City Bank of Rochester*, 96 N. Y. 33; *People* v. *Shears*, 158 App. Div. 577; *Matthews & Co.* v. *Employers' Liability Assur. Corp.*, 127 App. Div. 195.)

CARDOZO, Ch. J. The action is on a bond made by one Alexander M. Holden as principal, and the defendant as surety. By this bond, the surety bound itself to the plaintiff, the obligee, to make good " any and all losses sustained by the obligee of moneys, securities, or other personal property in possession of the principal, or for the possession of which he is responsible, by any act of fraud or dishonesty upon his part in the discharge of his duties amounting to larceny or embezzlement." The question is whether there has been a loss within the meaning of the contract.

Alexander M. Holden, the principal named in the bond, was for many years the treasurer of the plaintiff, Genesee Wesleyan Seminary, a school at Lima, New York. Holden was a private banker at Honeoye Falls, only a few miles away from the Seminary's home. He did business under the name "Bank of Honeoye Falls, A. M. Holden, Banker." When money was collected by him as treasurer, he placed it on deposit with himself as banker. This was known to the Seminary. Indeed, the Seminary's principal made out deposit slips, and left them often at the banking office. So, when money was paid out, the treasurer disbursed it by checks signed by himself as treasurer and drawn on himself as banker. This practice continued during all the years of his service. As far back as 1906, we find a statement in the application for the bond that the Bank of Honeoye Falls is to be the place of deposit. Without greater elaboration, we assume that the treasurer was expected to keep the money where he did.

How he was to keep it there, involves another question. What he did was to mingle it with the money of other depositors, and to use the entire fund indiscriminately as if it were his own. He did not even maintain a cash reserve equal to the fund that he received as a fiduciary. His average cash on hand was from $5,000 to $10,000. In May, 1919, for illustration, it was about $7,000; in May, 1920, about $4,000. The latter sum was only about a fifth of his average deposits during those years for the account of the Seminary alone. There were hundreds of thousands of dollars of deposits from other sources, not to mention other debts. The crash came in May, 1921, though it must have been threatening long before. Holden, then ill in the hospital, instructed his cashier to file a petition in bankruptcy. He died a few days later. At the date of the bankruptcy there was $23,743.86 on deposit to the plaintiff's credit. The deposits from all sources were $345,516.38. The cash on hand was only $6,957.98. A large part of the deposits had been loaned

to corporations in which Holden was a stockholder and an officer. Most of these loans turned out to be worthless. When he closed the doors of his " bank," he was insolvent beyond redemption.

We think the plaintiff's deposits should have been kept apart from others and held by the treasurer as a fund subject to a trust. Deposits in a bank or with a banker are classified often as general or special. The presumption is said to be that a deposit is general. The relation then created is that of debtor and creditor as upon any other loan. A special deposit is sometimes said to be equivalent to a bailment. It is not always of that order. Such a deposit may exist where the duty of the depositary is to hold, not the identical bills or coins, but an equivalent sum, to be kept intact, however, for the use of the depositor (*Woodhouse* v. *Crandall*, 197 Ill. 104; *People* v. *City Bank of Rochester*, 96 N. Y. 32). A bank accepting such a deposit is chargeable with responsibility, civil or criminal, like any other trustee, if it uses for itself what was to be held in trust for some one else. The fund may not be drawn down by loans or other withdrawals below the level of the trust (*Woodhouse* v. *Crandall, supra*). There is not even a pretense that Holden complied with that requirement, if requirement it be.

The question remains as to the terms, express or implied, upon which deposits were received. We think the evidence supports the finding that they were received, not as loans, but as a fund burdened with a trust. The Bank of Honeoye Falls was not a corporation. It was not even a partnership. It was Holden under another name. When moneys belonging to the Seminary were paid to Holden, treasurer, they became subject on the instant, as he took them, to a trust imposed by law. No one would doubt this if in the moment of the taking he had spent them for himself, without the form of a credit for the account of his depositor. They were not freed from the trust because he left them in his counting house where

he wore the title banker. He was the same person, bearing the same relation to those who had put faith in him. His duties were not changed any more than they would have been if he had collected the money with his right hand and turned it over to his left. The Seminary might consent, if so it pleased, that its treasurer should cease to be a fiduciary, and become a borrower and owner. Something more should be proved to effect that transformation than a deposit of the moneys upon the counter of his " bank." A trust imposed by law is not to be divested at the instant of its creation, and silently, as if by sleight of hand, converted into a loan. The presumption is a strong one that a fiduciary is not to deal for his own profit with the moneys of a trust, expending and even wasting at his own uncensored pleasure. If consent so sweeping is intended, there must be more than the naked fact of a deposit to bespeak the understanding. To say that a treasurer is free to use as his own the funds committed to his care is to say that a bond, securing his fidelity, and kept alive through annual premiums, is in truth an idle form. Business, seriously conducted, becomes a mere vagary.

We cannot find consent to so anomalous a relation. The Seminary knew that the treasurer was a banker. It knew that he had facilities for keeping at his place of business the money subject to the trust and of disbursing it thereafter. The form of a deposit at the so-called bank would thus offer itself at once as a convenient expedient. The evidence does not show that more than this was understood to be the effect of the transaction. At all events, it does not show a different understanding with such clearness and precision as to exact the finding of a loan as an inference of law. We may assume in favor of the defendant that conflicting inferences are possible. We may even assume that upon a prosecution of Holden for the crime of embezzlement a jury, appreciating the possibility that he had misinterpreted the

arrangement, might not unreasonably have absolved him of felonious intent (*People* v. *Meadows*, 199 N. Y. 1; *People* v. *Scudder*, 177 App. Div. 225, 230; 221 N. Y. 670; Penal Law, § 1306). Such considerations are not decisive of the problem now before us. There is no presumption of law that the treasurer misunderstood his rights and liabilities in dealing with the fund committed to his care. A furtive misuse for his own benefit of moneys placed in his custody for the use of some one else is embezzlement or larceny, or conduct substantially equivalent thereto, at least when the question at issue is one of civil liability (*Mitchell Grain Co.* v. *Maryland Cas. Co.*, 108 Kan. 379, 382; *Van Vechten* v. *Am. E. F. Ins. Co.*, 239 N. Y. 303, 305; *Lake* v. *Simmons*, 1927 A. C. 487). Here the trier of the facts has found that the transaction was a trust. " The plaintiff never knew of or authorized or consented to Holden's mingling its funds with his own or with other funds in his custody or of his making any use of its said funds except for its own uses and purposes." The evidence, if not coercive of the finding, is at least sufficient to sustain it. Uncertain implication will not serve to justify a trustee in shaking off his duty as a fiduciary and assuming the absolute dominion appropriate to ownership. If he wishes such dominion, he should ask for it, not covertly and indirectly, but unmistakably and frankly (*Wendt* v. *Fischer*, 243 N. Y. 439, 443). Public policy will not suffer us to be satisfied with less.

We conclude that Holden, treasurer, was subject to a continuing duty to keep the fund intact. If this be so, the evidence sustains a finding that his use of it for himself was fraud and dishonesty " amounting to embezzlement " within the meaning of the bond (cf. *Mitchell Grain Co.* v. *Maryland Cas. Co., supra*).

The judgment should be affirmed with costs.

Pound, Crane, Andrews, Lehman and O'Brien, JJ., concur; Kellogg, J., not sitting.

Judgment affirmed, etc.