GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Liquidator of the NORTH AMERICAN TITLE GUARANTY COMPANY, Plaintiff, *v.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant.

Supreme Court, Albany County, August 3, 1934.

*John M. Downes* [*Thomas Fleming Walsh* and *John A. Garrity* of counsel], for the plaintiff.

*Barton & Darling* [*Charles B. Sullivan* and *John J. Conners, Jr.,* of counsel], for the defendant.

SCHENCK, J. The plaintiff, Superintendent of Insurance, as liquidator of North American Title Guaranty Company, brings this action to recover the sum of $25,000 under a bond issued by the defendant casualty company, which bond indemnified and insured the title company and/or North American Securities Corporation " against the direct loss sustained while this bond is in force, and discovered as hereinafter provided, of any money or securities * * * in an amount not exceeding $25,000.00, as follows: (A) through any dishonest act, wherever committed, of any of the Employees as defined in Section 6 hereof, whether acting alone or in collusion with others." The bond is what is termed a " bankers' blanket bond," and pursuant to its provisions " employees " include salaried directors and officials. The title company was incorporated pursuant to the provisions of article 5 of the Insurance Law, to transact the business specified in subdivision 1 of section 170 of said article. It carried on an extensive title business, operating in many States.

The security company was formed under article 2 of the Stock Corporation Law, with the general powers incident to such corporation.

The plaintiff, as liquidator, claims that the title company sustained a direct loss in the sum of $25,000 through the dishonest acts of salaried employees, officers and directors. The defendant admits the issuance of the bond, but denies the allegations of loss within the terms thereof and of due performance and due demand, and alleges affirmatively that (1) notice of loss was not given within ten days; nor (2) proof of loss filed within three months; nor (3) action commenced within twelve months after discovery of loss, as provided by the terms of said bond. No question of fact was presented by the evidence.

The title company was affiliated with the security company, both corporations occupying the same offices and both having the same officers, except that the individual who was the president of the title company was the vice-president of the security company, and the individual who was the vice-president of the title company was president of the security company. The corporations had common directors and the stockholdings of both were vested substantially in the same persons. The salaries of some employees who performed work for both corporations were divided between the two corporations, although the salary of the auditor, who had charge and supervision of the books of both corporations, was paid by the title company.

Subsequent to the organization of the title company, the further sale of its stock was carried on by the sale of units of stock of both companies, whereby one share of preferred and one share of common stock of the title company was sold together with one share of stock of the security company. For some period of time the security company was paid a commission on each share of title company stock sold under this arrangement, and while the title company usually received all payments on account of sales of these units, it would from time to time give its check to the security company for its proportion of the amount of the stock sold. All of these transactions were carried in the books of both companies and at times the title company owed the security company, and at other times the security company owed the title company.

On October 1, 1928 the title company loaned to the security company the sum of $25,000, as evidenced by its check, drawn by order of its president and signed by its treasurer and assistant secretary, who were duly authorized to sign checks. The entry of this transaction was made in the books of the title company and the customary voucher was filed. The $25,000 loaned by the title company was for the purpose of having the security company acquire stock of the American Reserve Corporation, a company doing an extensive mortgage business. It appears that the title company, under date of September 26, 1928, had entered into an agreement with the reserve corporation, whereby a working arrangement for the transaction of title and mortgage business beneficial to the title company and the reserve corporation was to be carried out. This agreement was approved by the executive committee of the title company.

The entry on the books of the security company show that the proceeds of this check was invested in stock of the reserve corporation.

Clearly, the making of the loan by the title company to enable the security company to acquire a substantial stock holding in the reserve corporation was a corporate transaction, intended to benefit the title company, and while it may have been an *ultra vires* act, there was no effort made to in any wise cover up the transaction, nor can it be found that any individual as such profited thereby. The entire transaction was set forth in the books of the title company and as well, on the monthly statements of its financial condition. The title company filed an annual statement with the Superintendent of Insurance at the close of business in 1928, which disclosed this account and the annual examination by the Superintendent of Insurance in the early part of 1929 shows that the examiner knew of this transaction and reported it to the Superintendent of Insurance as follows: *"Loan receivable from North American Security Corporation.* The Company on October 1st, 1928, advanced to its subsidiary, the North American Security Corporation, the sum of $25,012 to enable the latter to purchase 556 units preferred stock and 5,000 shares of commom stock of the American Reserve Corporation, name changed October 11, 1928, to Franklin Funding Corporation. By various inter-company transactions the amount of the loan on December 31, 1928, was reduced to $21,958.06." The books of the security company also carried an entry of this item.

The plaintiff has recovered a judgment against the security company on account of this transaction, and an execution thereunder has been returned unsatisfied. As liquidator of the title company, he now seeks to hold the defendant under its bond for what plaintiff claims to be a dishonest act. In other words, the plaintiff, as liquidator of the obligee corporation, seeks indemnity under the bond by reason of the claimed wrongful act of the obligee in loaning its own money. It would seem that he is endeavoring, as liquidator of the obligee, to do that which the obligee under the bond could not itself have done.

It cannot be found that this transaction, openly carried on the books of both the title company and the security company, was a dishonest act of any officer or employee. The title company had entered into an agreement with the reserve corporation which was contemplated to be of mutual benefit to both companies in the title and mortgage business. It would appear that the title company was desirous of obtaining a substantial interest in the reserve corporation and attempted to do so through its subsidiary, the security company. If the act of loaning to the subsidiary some money for the purpose of purchasing this stock was an *ultra vires* act, it

certainly was not the " dishonest act " contemplated in the provisions of this blanket bond. The act was not criminal unless done with criminal intent. (*People* v. *Flack*, 125 N. Y. 324; *People* v. *Baker*, 96 id. 340; *People* v. *Wiman*, 148 id. 29.) A dishonest act may be something short of criminality. (*World Exchange Bank* v. *Commercial Casualty Ins. Co.*, 255 N. Y. 1.)

The plaintiff, as liquidator of the title company, could not recover under this blanket bond unless the title company could have recovered. As successor to the title company, he has no greater rights than the company, as obligee, had theretofore. As I view it, this was simply an inter-corporation transaction and the act of the officers of the title company in furnishing the money in order that the security company might acquire a holding in the reserve company bore a reasonable relationship to the benefits sought to be accomplished by the agreement entered into and was clearly a corporate act. The corporation may have exceeded its authority, but no moral turpitude was involved, nor did any individual employee, director or official convert to his own use any part of the moneys transferred.

The leading cases which define " a dishonest act " are cited in the brief of plaintiff. (*Genesee Wesleyan Seminary* v. *United States Fidelity & Guaranty Co.*, 247 N. Y. 52; *World Exchange Bank* v. *Commercial Casualty Insurance Co.*, 255 id. 1; *People ex rel. Perkins* v. *Moss*, 187 id. 410.) These cases have to do with situations where some individual is liable for a wrongful act, or where some officer or employee has profited by some wrongful act. Here we have a corporate act, every detail of which is set up in the corporations' books of accounts in the usual course of business.

A corporation is the mere conception of the legislative mind and when the law prohibits it from doing an act, that prohibition extends to the board of directors and to each director separately and individually. (*People* v. *Knapp*, 206 N. Y. 373.) It does not follow, however, that the directors of a corporation who have wasted the corporation's money in a useless office building are dishonest, nor could such corporation as obligee recoup for such improvident expenditures from a bonding company under an indemnity bond such as we have here.

The act of loaning money does not constitute a crime, nor is it an immoral act. There is no express prohibition against a corporation loaning money to its subsidiary. The making of this $25,000 loan following the execution of the agreement with the reserve corporation indicates no bad faith on the part of any officer or employee. The act was neither *malum prohibitum* nor *malum in se*.

At most it was but a mere *ultra vires* act of the title company for which there can be no recovery by that corporation as obligee under its indemnity bond.

It is not necessary to pass upon the questions raised by the defendant as to whether or not notice and proof of loss was properly given and the action timely commenced.

Judgment must be for the defendant.   Submit findings.