**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff-Appellant-Cross Appellee,**

v.

**USAFORM HAIL POOL, INC., et al., Defendants-Appellees-Cross Appellants.**

**No. 31046.**

United States Court of Appeals, Fifth Circuit.

July 3, 1972.

George Stelljes, Jr., Jacksonville, Fla., Elmer W. Beasley, Hartford, Conn., for plaintiff-appellant.

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for amicus curiae.

Warren Cole, Jr., Thomas T. Cobb, Cobb, Cole, Sigerson, McCoy, Bell & Bond, Daytona Beach, Fla., for defendants-appellees.

Before TUTTLE, INGRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case started out as a suit for declaratory decree brought by a bonding company, Fidelity and Deposit Company of Maryland, to determine its liability on a fidelity bond. After a prior appeal which affirmed a summary judgment against various intervenors who were not named in the bond,[1] the action proceeded on the counterclaims filed on behalf of three insured corporations, two of which were in receivership. The suit was heard as though these insureds were plaintiffs and F & D the defendant. Judgments were entered against F & D in the total amount of $918,919.43. F & D thinks this is too much. The three claimants think it is not enough, and cross-appeal on the ground that they should have been awarded punitive damages. Because the district court, 318 F. Supp. 1301, used the wrong standard of law in determining the amount of liability on the bond, we reverse and remand for further consideration. We affirm the denial of punitive damages as having been determined by the prior appeal.

## I. Liability on the Bond

The facts of this case are well summarized in the prior opinion of this Court, reported at 408 F.2d 72 (5th Cir. 1969), and need not be restated here. It is sufficient to say that the acts of infidelity of employees upon which F & D's liability on its bond was predicated consisted of alleged misuse of funds being held by the insured corporations in a special "premium account." The district court viewed this account as a trust fund. However, the funds were used to pay corporate obligations, not for trust purposes.

The critical question determinative of this appeal is whether the claimants can recover on a bond insuring the fidelity of their employees when the employees took nothing from the claimant corporations, but used "trust" funds to pay legitimate corporation obligations. We hold that they cannot.

We reach this decision on the ground that the insureds suffered no loss from the use of money used to pay just corporate debts.

The fact that must be remembered in this case is that the bond was written to protect against loss to the insureds, not the losses of third parties.[2] The case

1. American Empire Ins. Co. of S. Dak. v. Fidelity & Deposit Co. of Md., 408 F.2d 72 (5th Cir. 1969).

2. In the prior appeal, Judge Dyer, speaking for the Court said:

"We are of the firm view that F & D's contract meant just exactly what it clearly said, that is, that it insured the named corporations and those corporations only, against the defalcations of their employees." 408 F.2d at 77.

must be viewed as if the insured companies were solvent and had adequate funds in their general accounts to replace the money diverted from the premium accounts. If the insureds cannot recover on the bond in that situation, their insolvency does not improve their case against the bonding company.[3]

The controlling principle of law was enunciated by this Court in Continental Casualty Co. v. First National Bank of Temple, 116 F.2d 885 (5th Cir. 1941). In that case, funds had been dishonestly withdrawn by bank employees from the accounts of bank customers. When subsequent deposits were made by other customers, credits for the amounts of such new deposits were given to the accounts from which withdrawals had been made, and the deposit slips were withheld from the records of the bank, so that the books would balance. However, such new deposits only served to cover up the previous withdrawals and the liability of the bank remained the same, being simply switched from the old to the new deposits.

We held that the withholding of deposit slips in these circumstances caused the bank to suffer no loss, because its assets were neither increased nor diminished. We said there that a loss would only result from some action which reduced the available assets in the hands of the bank as against its liabilities to depositors, creditors, and stockholders.

The same conclusion was reached by the Fourth Circuit in In re Schluter, Green & Co., 93 F.2d 810 (4th Cir. 1938). There a dishonest brokerage house employee had sold customers' securities without authorization from the customer, and had taken money from customers without buying the securities ordered by the customer. The Court said:

> "The conduct of Miss Seay [the employee] may fairly be described as dis-

honest or criminal; but it does not follow that thereby the company suffered a loss. On the contrary, it appears that the money derived from her unlawful behavior was deposited in the company's bank account, and, unless the company thereafter lost the funds as the result of dishonesty or criminal conduct, the company suffered no detriment." 93 F.2d at 812.

The same Court has held that neither wash transactions nor frauds on creditors make out insured losses. Kerr v. Aetna Casualty & Surety Co., 350 F.2d 146 (4th Cir. 1965).

In this case, before the diversion of the trust funds, the claimants owed legitimate corporate obligations to third parties. After the funds were diverted from the premium accounts to pay the obligations, the corporations no longer owed the original creditors, but instead owed the same amount to the beneficiaries of the premium accounts from which funds had been diverted. The corporate obligations remained the same in amount and the corporate assets remained the same. Absent sufficient corporate assets to refund the premium accounts, the premium account beneficiaries suffered a loss but no greater than the other creditors would have suffered if they had not been paid.

The district court relied on a series of cases which are all distinguishable from the case now before us. In Franklin Savings & Loan Co. of Macon v. American Employers Insurance Co., 99 F.2d 494 (5th Cir. 1938), the fraudulent acts consisted of the paying of dividends in preference to corporate debts, to make the stock more saleable. Under state law it was a crime to pay a dividend out of funds other than "net earnings," or where the payment increased the corporation's debts. We held that there was a loss to the corporation when funds were distributed to stockholders,

---

3. Scott v. Armstrong, 146 U.S. 499, 507, 13 S.Ct. 148, 36 L.Ed. 1059 (1892); Fidelity & Cas. Co. of N.Y. v. Hoyle, 64 F.2d 413, 415 (4th Cir. 1933); McKee v. American Cas. Co. of Reading, Pa., 316 F.2d 428 (5th Cir.), cert. den., McKee v. Great American Ins. Co., 375 U.S. 830, 84 S.Ct. 75, 11 L.Ed.2d 62 (1963).

to whom there was no legal obligation, and made unavailable to pay the corporate debts. This differs from this case where the funds were used to reduce corporate indebtedness.

In Glens Falls Indemnity Co. v. National Floor & Supply Co., 239 F.2d 412 (5th Cir. 1956), the insured company suffered an inventory shortage due to the misfeasance of its warehouse employee. The issue before the Court was whether or not the employee had acted "dishonestly." There was loss of corporate assets.

Insurance Co. of North America v. Greenberg, 405 F.2d 330 (10th Cir. 1969), was a case in which the defrauded party, Greenberg, had purchased the accounts receivable of the Oklahoma Steel Corporation. The corporation was to hold money received on these accounts in trust for Greenberg, but did not do so. The crucial difference between that case and the present situation is that Greenberg, the defrauded third party creditor, was *named insured* under the fidelity bond of Oklahoma Steel.

In Duel v. National Surety Corp., 64 F.Supp. 961 (E.D.Wis.1945), the insured under the fidelity bond was an insurance company. Its general agent caused premiums due to be assigned to a corporation which was under his control. Thus the premium money went not to pay legitimate debts of the insured company, but into the pockets of the double-dealing employee.

Genesee Wesleyan Seminary v. United States Fidelity & Guaranty Co., 247 N. Y. 52, 159 N.E. 720 (1928), involved an *improper commingling of funds by the* bonded employee and expenditures for improper purposes that resulted in a clear loss to the insured.

We hold that the taking of money from the premium account of an insured company to pay other legitimate obligations of that company does not constitute a loss within the meaning of the fidelity bond before us in this case. Since the findings of the district court were not addressed specifically to the question of whether funds taken from the insured companies' premium accounts went to pay legitimate expenses of the respective companies, we vacate the judgment entered below and remand the case for further consideration and the entry of additional findings of fact. It goes without saying that any funds diverted to the personal use of the employees, to other corporations without legal claims, or for any purpose at all that was not for a legitimate corporation purpose would represent a loss to the corporation, and the claimants would be able to recover for such amounts. Rather than try to rely on findings made under wrong principles of law to conclude the case here, the better part of justice is to remand the case for reconsideration of the amount to which claimants are entitled, if anything, in the light of the correct legal principles as announced in this opinion. We have carefully reviewed all other grounds asserted by appellant and affirm the district court in all other respects.

## II. Punitive Damages

The three insured companies all included in their counterclaims prayers for punitive damages. These claims for punitive damages were specifically dismissed by the district court when it entered summary judgment against the intervenors. By cross-appeal the insured companies now challenge the correctness of the district court's ruling.

In our previous opinion we made no explicit reference to the district court's dismissal of the punitive damage claims. The issue was raised by the notice of appeal, however, and we affirmed the order of the district court.

The cross-appellants, therefore, are entitled to no relief. Our affirmance on the prior appeal is conclusive as to the entire order appealed from, even those issues as to which no point was made on appeal. Gulf Coast Building & Supply Co. v. International Brotherhood of Electrical Workers, 460 F.2d 105 (5th Cir. 1972).

Vacated and remanded in part; affirmed in part.