**CINCINNATI INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**STAR FINANCIAL BANK f/k/a Central Bank and Trust Company, Merchants National Bank of Muncie, and United States Fidelity & Guaranty Company,** Defendants–Appellees.

No. 93–1160.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1994.

Decided Sept. 19, 1994.

Michael E. Brown, Jeffrey A. Doty (argued), Kightlinger & Gray, Indianapolis, IN, for plaintiff-appellant.

Peter H. Drumm (argued), John B. LaRue, Richard L. Ludwick, Benadum Cecil & Drumm, Muncie, IN, for Star Financial Bank.

Peter H. Drumm, Muncie, IN, for Merchants Nat. Bank of Muncie, U.S. Fidelity and Guar. Co.

Before WOOD, Jr. and KANNE, Circuit Judges, and FOREMAN, District Judge.*

KANNE, Circuit Judge.

■ The Cincinnati Insurance Company ("Cincinnati") filed this declaratory judgment action against Star Financial Bank ("Star Bank"), Merchants National Bank of Muncie ("Merchants Bank"), and United States Fidelity & Guaranty Company ("USF & G").[1] Cincinnati is Star Bank's insurance company. Cincinnati sought a determination that the insurance policy it issued to Star Bank (called a "depository institutions blanket bond") provided no coverage for Star Bank's potential liability in an action that Merchants and USF & G filed against Star Bank in Indiana state court. Cincinnati also sought a declaration by the court that it had no duty to defend Star Bank in the action.

■ The district court granted Star Bank's motion for summary judgment in part, and Cincinnati's motion for summary judgment in part, and entered a declaratory judgment.[2] With respect to Star Bank's mo-

---

* The Honorable James L. Foreman, United States District Judge for the Southern District of Illinois, is sitting by designation.

1. Merchants Bank and USF & G failed to appear or answer Cincinnati's complaint in this matter, and the clerk of the district court entered default against them. However, no judgment on the default was entered other than the declaratory judgment. The court's entry of declaratory judgment states, "[t]his final order resolves all claims and issues in this cause," but does not specifically mention the entry of default. Nevertheless, we have jurisdiction over this matter. See *Bankers*

*Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

2. The district court also determined that it had diversity jurisdiction in this case, because plaintiffs had adequately met the "amount in controversy" requirement. Although the principal amount of Star Bank's claim under the Bond is $29,801.95 ($39,801.95 minus a $10,000 deductible), the district court determined that by including at least $12,000 in pre-judgment interest and at least $8,909.20 in costs and attorney's fees, Cincinnati may ultimately be required to pay Star Bank in excess of $50,000.

tion, it held that "[t]he [s]tate court claim presents a potential liability that would constitute a collectible loss under the Bond." It also determined, with respect to Cincinnati's motion, that Cincinnati had no duty to defend Star Bank against the state court action.[3] Cincinnati appeals the district court's grant of Star Bank's motion with regard to coverage under the blanket bond.

## FACTUAL BACKGROUND

The facts of this case are scant, but they are undisputed. On September 14, 1986, Michael R. Garrison applied for a $50,000 business loan from Merchants Bank. He told Merchants Bank that he needed the money to purchase some farm equipment that his grandfather, Michael A. Garrison, owned. In reality, neither Michael A. Garrison nor his farm equipment existed.

Merchants Bank failed to uncover Michael R. Garrison's misrepresentations, and proceeded to loan him the money he requested. Merchants Bank first executed a direct reduction collateral note with Michael R. Garrison for $50,000. It then gave him a bank money order, made payable to the fictitious grandfather, Michael A. Garrison. (Perhaps Merchants Bank intended for Michael R. Garrison to pay Michael A. Garrison for the equipment by giving him the bank money order directly, but we cannot know this for sure from the record). The same day that Merchants Bank gave him the bank money order, Michael R. Garrison endorsed the name "Michael A. Garrison" on the back of the money order, and deposited the proceeds into a checking account he maintained at Star Bank. He deposited the entire loan, except for $100, which he opted to receive in cash.

In addition to a checking account, Michael R. Garrison had two outstanding loans at Star Bank. After he had presented the money order for deposit at Star Bank, Michael R. Garrison went to a different branch of Star Bank, wrote a check for approximately $14,-000, and applied it against one of these loans. He then went to yet another branch of the Bank, and wrote a check for $18,000 in satisfaction of his other Star Bank loan.[4]

For eighteen months, Michael R. Garrison made payments on his loan from Merchants Bank, but then he defaulted. Upon the default, Merchants Bank investigated the loan, and discovered that neither Michael A. Garrison nor the collateral securing the note existed. Merchants Bank then made a demand upon Star Bank for payment of the $50,000 bank money order, on the ground that Star Bank had wrongfully paid Michael R. Garrison over a forged endorsement. Star Bank refused to pay Merchants Bank the $50,000. On July 20, 1989, Merchants Bank and its insurer, USF & G, filed suit against Star Bank in state court to recover the amount of the wrongful payment.[5]

During this time, Star Bank was insured by Cincinnati, under the terms of its deposi-

Although the question is close, we agree that the district court properly exercised jurisdiction over this case. "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Only if the district court determines "to a legal certainty that the claim is really for less than the jurisdictional amount" should it dismiss the claim for lack of jurisdiction. *Id.* Star Bank does not allege that Cincinnati has made its claim in bad faith, and the district court found that it is probable that the amount in controversy will ultimately be in excess of the jurisdictional threshold.

3. The court did declare, however, that Cincinnati had an obligation to *indemnify* Star Bank against

costs and fees it incurs in conducting its own defense. Thus, although it granted Cincinnati's summary judgment motion with regard to the duty to defend, it denied Cincinnati's motion for summary judgment to the extent Cincinnati sought to absolve itself of a duty to indemnify.

4. The two checks Michael R. Garrison wrote to satisfy his Star Bank loans totalled approximately $32,000. Added to the $100 he withdrew in cash, the record accounts for the whereabouts of only $32,100 of the loan proceeds. Neither the district court nor either party makes any mention of how the other $17,900 was applied.

5. At this point, Merchants Bank and USF & G sought only $39,801, which was the $50,000 amount reduced by the payments Garrison had tendered to Merchants before he defaulted.

tory institution blanket bond. The blanket bond provides, in relevant part:

> The Cincinnati Insurance Company ... in consideration of an agreed premium, ... agrees to indemnify the Insured for:
>
> \*  \*  \*  \*  \*  \*
>
> D. Forgery, Alteration and Unauthorized Signatures
>
> Loss Resulting directly from
>
> (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, withdrawal order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit;
>
> \*  \*  \*  \*  \*  \*
>
> ### GENERAL AGREEMENTS
>
> \*  \*  \*  \*  \*  \*
>
> G. Court Costs and Attorney Fees
>
> The Company shall indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured would constitute a collectable loss under this bond in excess of any Deductible Amount.
>
> \*  \*  \*  \*  \*  \*
>
> ### DEFINITIONS
>
> (1) the word "Forgery" means the signing of the name of another with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose....

Star Bank notified Cincinnati of the claim Merchants Bank and USF & G had filed against it. Cincinnati refused to provide Star with legal defense and denied coverage for the claim under the bond. It then filed this declaratory action.

### STANDARD OF REVIEW

■ We review *de novo* a district court's grant of summary judgment, viewing the rec-

ord and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### LEGAL ANALYSIS

The sole question in this appeal is whether the depository institutions blanket bond requires Cincinnati to indemnify Star Bank against the judgment Merchants Bank and USF & G may obtain against Star Bank in its state court action. This issue is exclusively a matter of contract interpretation.

■ The language of the bond clearly indicates that it covers "losses resulting directly from" forgery of a negotiable instrument. Whether there is coverage under the bond in this case depends on two conditions: (1) whether Michael R. Garrison's endorsement of Michael A. Garrison's name constitutes a "forgery" as that term is defined in the blanket bond; and (2) whether Star Bank will have suffered a "loss" if it is required to pay Merchants Bank and USF & G for alleged wrongful payment of the money order over a forged endorsement. We begin by noting that in Indiana, the clear and unambiguous language of an insurance policy must be given its plain and ordinary meaning. *Fidelity & Guaranty Ins. Underwriters v. Everett I. Brown Co.*, 25 F.3d 484, 486 (7th Cir.1994) (citing *City of Muncie v. United Nat'l Ins. Co.*, 564 N.E.2d 979, 982 (Ind.Ct.App.1991)).

According to the unambiguous terms of the bond, forgery requires "the signing of the name of another" and explicitly excludes the signing of one's own name. Here, the parties agree that Michael R. Garrison did not sign his own name on the back of the bank money order—he signed the name of his fictitious grandfather, Michael A. Garrison. Thus, if Garrison did not sign his own name, it logically follows that he must have signed the name of "another." [6]

---

6. Cincinnati does not argue that because Michael

A. Garrison does not exist, he cannot be "anoth-

In addition to requiring the signing of the name of another, the definition of forgery also requires that the name be signed "with the intent to deceive." At first glance, it would seem obvious that Garrison intended to deceive by signing the name of the fictitious grandfather. Merchants Bank issued the money order in the name of the grandfather, Michael A. Garrison, rather than in the name of their borrower, Michael R. Garrison. Michael R. Garrison was able to induce Merchants Bank to issue the money order only because he professed to have needed the loan to buy his grandfather's farm equipment, which in turn was to be the collateral on the loan. A reasonable inference may be drawn from these circumstances that Michael R. Garrison's endorsement in Michael A. Garrison's name was crucial to the execution of a scheme to personally acquire the proceeds of a fraudulently obtained loan. Thus, one could conclude that with the endorsement, Michael R. Garrison intended to deceive both Merchants Bank and Star Bank.

Such conclusions, however, would be mere inferences on our part, and they would have been drawn in favor of the *movant*, Star Bank. Cincinnati, on the other hand, argues that because Michael R. Garrison was the "intended owner" of the loan proceeds, neither Merchants Bank nor Star Bank was deceived by Michael R. Garrison signing the false name and using the proceeds to pay off his debts. Cincinnati asserts that "since the intended owner in fact *did* receive the proceeds, no forgery occurred." [7] Ironically, Star agrees wholeheartedly that Michael R. Garrison was the "rightful, lawful owner" of the proceeds.[8] Yet, it maintains that the money order was nonetheless forged, and that "Michael R. Garrison acted with deceit when he negotiated the money order." Star Bank alleges that "[t]hat act was the last step in a lengthy process of fraud and deceit he had perpetrated on Merchants and subsequently Star."

Despite our strong suspicions, from the record it is impossible to determine with any certainty what Merchants Bank intended when it made the money order payable to Michael A. Garrison but handed it over to Michael R. Garrison. That Merchants Bank intended for Michael R. Garrison to benefit personally from his loan is beyond dispute; however, the factual issue of whether Michael R. Garrison acted with deceit when he presented the money order to Star Bank does not hinge on whether he was the "rightful owner" of the loan proceeds. Instead, it hinges on whether Merchants Bank intended for Michael A. Garrison, rather than Michael R. Garrison, to be the actual payee of the money order.

---

er" whose name was signed by Michael R. Garrison. Nor does it argue that the term "another" is ambiguous. Thus, although Indiana law may deem valid an endorsement by a person in the name of a fictitious payee, if the maker never intended the named payee to have an interest in the instrument, *see* Ind.Code 26–1–3–405; *Ambassador Financial Serv. v. Indiana Nat'l Bank*, 591 N.E.2d 1061 (Ind.Ct.App.1992), *op. vacated on other grounds*, 605 N.E.2d 746 (Ind.1992), we need not consult any extrinsic sources in this case to interpret the definition of forgery in the contract.

7. In a footnote to its brief, Cincinnati states that "it is undisputed that the proceeds of Merchants loan reached the *intended payee*, Michael R. Garrison." (emphasis added). We believe this is an inaccurate representation of the record, for Star Bank admits only that Michael R. Garrison "owned" the proceeds of the money order. It does not admit that Merchants Bank intended for Michael R. Garrison rather than Michael A. Garrison to be the one to actually cash the money order.

8. A central paradox in this case is the fact that *both* parties have reason to insist that Michael R. Garrison was the intended "owner" of the loan proceeds. Cincinnati wants to maintain that Michael R. Garrison "owned" the proceeds, because then it may argue that no forgery occurred at all—Garrison could not be said to have "deceived" anyone by endorsing the money order to receive funds that were intended to go to him.

Star Bank, on the other hand, concurs with Cincinnati that Garrison rightfully owned the proceeds, because it then asserts that if it is required to return the proceeds of the money order to Merchants Bank, it will suffer an actual loss. Their argument goes like this: Garrison rightfully owned the proceeds and transferred them to Star Bank; thus, Star Bank became the rightful owner of the proceeds. One who loses money one rightfully owns necessarily incurs a loss.

Unfortunately for Star Bank, it is difficult as a practical matter to conceptualize how the rightful owner of money order proceeds can at the same time be a deceitful forger of the money order.

As we have stated, in reviewing grants of summary judgment, we must view the record in the light most favorable to the non-movant—in this case Cincinnati. Although the parties deny that they differ, the truth is that Cincinnati insists that Michael R. Garrison did not intend to deceive anyone because he was the intended payee of the loan proceeds, and Star Bank disagrees. The district court made no finding that Michael R. Garrison intended to deceive Star Bank or Merchants Bank when he signed Michael A. Garrison's name. Because the parties hotly contest the factual issue of whether Michael R. Garrison intended to deceive the banks when he signed the name of another, and the record reveals little else than the fact that Michael R. Garrison did sign the name of another on the money order, we must find that a genuine issue of material fact exists. Thus, based on the issue of whether Michael R. Garrison "forged" the endorsement on the money order within the meaning of the blanket bond, we conclude that summary judgment in favor of Star Bank was inappropriate.

This does not quite end the matter, however. For if we accept Cincinnati's second argument that Star Bank can suffer no loss from the Garrison transactions, then we must conclude that there is no coverage under the bond and direct the district court to enter summary judgment in favor of Cincinnati.

We find once again, though, that both parties' positions are unsupported. Our review of the record indicates that the parties failed to provide the district court with sufficient facts to determine whether the Garrison transaction would directly result in a "loss" for Star Bank. The district court held that the state court claim presents a "potential liability that would constitute a collectible loss under the Bond"; however, it did not determine the extent of that loss. It stated only that the "Plaintiff's argument regarding the extent of Star Financial Bank's actual 'loss' in the transaction may ultimately have some effect on the dollar amount of coverage...."

Cincinnati argues that Star Bank can sustain no loss at all, but rather has actually *gained* money from the Garrison transaction, and therefore is not covered under the bond.

It reasons that because Garrison used his ill-gotten proceeds to pay off loans he had with Star Bank, Star Bank has, by reducing its loan liabilities, currently benefitted from Garrison's actions. Cincinnati claims that if Star Bank is required to return the proceeds of the money order to Merchants Bank and USF & G, all parties to the Garrison transactions will merely be returned to the status quo before the transactions took place. It alleges that if Star Bank must disgorge the proceeds, Star Bank can simply reinstate Michael R. Garrison's loans by reversing its accounting procedures, and that in the end, Star Bank will have neither increased or decreased its liabilities.

Significant case law exists to support Cincinnati's argument that with respect to the approximately $32,000 of loan proceeds Michael R. Garrison paid Star Bank to satisfy his debts, Star Bank only stands to incur a "bookkeeping or theoretical loss[ ], not accompanied by actual withdrawals of cash or other such pecuniary loss," and that such loss is not recoverable under a bankers' blanket bond. *See FDIC v. United Pacific Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir.1994) (citations omitted) ("Language in a fidelity bond to the effect that the insured is covered for 'losses directly resulting from ...' indicates a direct loss or the actual depletion of bank funds caused by the employee's dishonest acts."); *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 691 (5th Cir.1980) (holding that where a bank has suffered no increase in liabilities, but rather experienced only a "shifting of liabilities," it suffered no loss and therefore was not entitled to recover against insurer); *Fidelity & Deposit Co. v. USA-Form Hail Pool, Inc.*, 463 F.2d 4, 6 (5th Cir.1972) (stating that bank suffered no loss where assets were neither increased nor diminished); *In re Schluter, Green & Co.*, 93 F.2d 810 (4th Cir.1938) (stating that "in the sense of the bond, [there was no] loss by the company" where proceeds of property were stolen from it, but were then deposited back into its coffers, so that "it was provided with an equivalent with which at any time the property could have been replaced.").

However, even if one concludes that Star Bank cannot incur any actual loss for the

money order proceeds that Garrison returned to it in the form of loan repayments, Garrison's two loan repayments only account for $32,000 worth of the proceeds.[9] Merchants Bank and USF & G are claiming $39,801 against Star Bank in the underlying action. Thus, it is possible, even under Cincinnati's position, that Star Bank may suffer an almost $8,000 loss if it is required to satisfy a judgment against it from the state court proceedings.

Beside the $32,000 used for loan repayments, nothing in the record indicates to us how Garrison's $50,000 checking account deposit was applied. He may have withdrawn the remaining $18,000 and absconded, or used it to make loan repayments to Merchants, or even left it in his checking account so that Star Bank could access it. In fact, we cannot even tell what Garrison did with the $100 he took away in cash. Because it is equally possible that Star Bank incurred no loss at all (in that it somehow retained access to enough of the rest of the proceeds to make up the potential $8,000 difference) as it is that Star Bank incurred a full $8,000 of loss, we are forced to conclude that the trial court erred in granting summary judgment in favor of Star Bank.

On the record before us, there are insufficient facts to determine as a matter of law that (1) Garrison's endorsement of the money order was a "forgery" within the meaning of the blanket bond; and (2) an adverse judgment in the underlying state action would result in an actual loss to Star Bank. Thus, Star Bank was not entitled to a judgment as a matter of law, and summary judgment was improperly granted in its favor.

## CONCLUSION

The district court erred in granting partial summary judgment in favor of Star Bank on the issue of coverage under the bond. For the foregoing reasons, that portion of the district court's grant of summary judgment, and the portions of its declaratory judgment regarding coverage and indemnity for court costs and attorney's fees, are VACATED. The

case is REMANDED for further proceedings consistent with this opinion.